Mr. Justice St.ory
 

 delivered, the opinion of the Court.— '
 

 This is'a writ of error'to'the Circuit Court of the district of Maryland. The.original action-was brought by the plaintiffs in error against the defendants, upon a policy of-insurance.under
 
 *182
 
 Written by the defendants, whereby “ they caused Thom as Te
 
 nant, for whom it may concern,
 
 to'he insured, lost or not lost,at and from Havre de Grace to New-Orleans, with
 
 liberty
 
 to touch and trade at Havana;” ten thousand dollars upon brig Creole and "appurtenances. The declaration averred the interest, in the plaintiffs, and a total loss by the perils of the seas. The defendants pleaded the general issue; and upon the trial, after the whole evidence .on both sides had been given' in, the Court, upon the prayer of the defendants’ counsel, instructed the jury, “.‘that upon
 
 tlie whole evidence in the case,
 
 ” as stated; the plaintiffs are riot, entitled to-recover, and the verdict of the jury, "ought to be for the defendants.” Nine different instructions were then prayed for on behalf of the plaintiffs, which werfe all refused-.by -the Court, upon the ground that the opinion already given, disposed of the whole cause upon its merits.- If that •opinion was correct, this refusal was entirely justifiable; for the Court was under no obligation to discuss or decide other points, When the plaintiffs’ case , was already shown to possess a fatal defect.
 

 The general question, then,- before this Court, is upon the propriety Of the instruction so given to the jury.,
 

 A suggestion-has-been- thrown -out at-the bar, - that this-instruction was "mot intended to be positive and absolute, but merely advisory to the jury; that it was not meant to take away the right of the jury to decide freely on the facts; but merely to offer for their consideration-those views, which the Court-had arri/ed at, and which it might at all. times properly suggest to the jury. It is, doubtless, nothin the province of a Court, in the exercise o.f its discretion, to sum up the facts in the case to the jury, and submit them, With the inferences of law. deducible therefrom, to the free judgment of the jury. But care should be taken in-all such cases, to separate the law from the facts, and to leave the latter, in unequivocal terms, to the jury, as their true" ancl -pecumuo province. We do not, however, understand that the present instruction, was in fact, or was intended to be, merely in the nature of advice to the jury. It is couched in the most absolute terms, a'nd imposed an obligation upon the jury to find a verdict for the .defendants. It assumed there were no. disputable facts- or inferences, proper for the consideration of the jury upon .the. merits; and that, upon the unquestioned facts, the plaintiffs had no legal -right of recovery. It is in this view, that it is open for the consideration of this Court; arid in this view, it will now be'discussed, as it was discussed in the argument at the bar.
 

 Four grounds have been presented to justify the opinionof the Circuit Court; which, it is said, are apparent from the record itself, and .each of them is decisive upon the case.. The first is,
 
 *183
 
 the unseaworthiness of the ship, at the time when she broke ground at Havre, and commenced the homeward voyage; by reason of the master and a sufficient crew, not being then oti board. The second is, the laying off and on, near the port of Havre, after departure on the voyage, for several hours, waiting for the master to come on board; which, it is said, was an improper detention, and amounted to a deviation. The third is, the omission of Coiron to communicate to his agent, ,or ot,her persons in America, the knowledge of the loss, by the way of Havana; so as to countermand the order of .insurance, which it contended was a fatal omission of duty. The fourth is, the omission to mention the time of the vessel’s sailing from Havre, in the letter of the 20th October,. ordering the insurance; which, whether fraudulent or not, was a material • concealment, and misled the underwriters in the- same manner, as if. there had been a representation that the time of the sailing was uncertain.
 

 If is to be considered that these points do not come before this Court upon a motion for a new trial after verdict, addressing itself-to the sound discretion of the Court.- In such cases, the whole evidence is examined with minute care, and' the inferences which a jury might.properly draw from it, are adopted by the Court itseif. If, therefore,, upon the.whole case, justice has been done between the parties, and the verdict -is substantially right, no new trial will be granted, although there may-have been some mistakes committed at the trial. Xhe reason-is, that the application is not matter of absolute right in the party, but. rests in the judgment of the Court, and is tb bfe ‘granted onl/ when it -is -in furtherance -of substantial justice. The case-is .far different upon a writ of error, bringing the proceedings- at the trial, by a bill of exceptions, to the cognizance of the Appellate Court. The- directions of the - Court must then stand or-fall, upon their own intrinsic propriety, as matters of law.
 

 The first and second points appear, to us, in the present case,to resolye themselves intd.matters of fact; and the facts are too imperfect and • too general, to enable the Court to draw any legal conclusion 'from them,, either as tó seaworthinéss or deviation. There is. ho doubt, thát every ship must,' at the commencement of the voyage insured, possess all the qualities of seaworthiness, and be navigated by a competent master and crew. But how is this Court tp arrive at the conclusion,, that-the brig Creole was not in that predieamént at the commencement of the present' voyage ■? The argument assumes, that the ship ought hot to have got under *wbigh, or proceeded into the offihg, until the master, and all the -crew, necessary, not for that act, but for the entire voyage, -were on board. If the law were'so, we have no.means of ascertaining what crew was ac-
 
 *184
 
 tuajly on board at the time; nor whether the voyage was ausolutely intended to be commenced on that day; nor whether the departure'was merely contingent and dependent upon the-master’s procuring- the proper ship’s papers, and the breaking ground, and standing off and on in the offing, were preparatory Steps,,only for this purpose; nor-whether for such purposes the pilot and'crew on.board, were not amply sufficient. Rut we are far . from being satisfied that the law has interposed any such positive rule, ás the argument supposes. Seaworthiness in’port,‘' or for temporary -purposes, such as mere change of ' position in harbour, or proceeding out of port, or lying in the offing, may be one thing.; and seaworthiness for. a, whole voyage, quite another. A policy on a ship, at and from a port, will attach, although the ship be at the time undergoing extensive repairs in port, so as in a general sense, for the purposes of the whole. voyage, to be Utterly • unseaworthy. What is a competent crew for the voyage; at what .time such crew should be on board ;' what is proper pilot ground; what is the course -and usage of trade in relation to the master and- cfew being on board, when the ship breaks ground for the' voyage; ar.e questions of fact, dependent-upon nautical-testimony; and are incapable of being-solved by a Court,, without assuming to itself the-province, of á'jury, ¿hd judicially-relying on. its own skill in; -maritime. affairs. In' this, view of the point, it-' is -not necessary to' rely on the doctrine 'of Rord Chief .Justice Abbott, -in Weir
 
 vs.
 
 Aberdeen, (2
 
 Barn. & Ald.
 
 320,) which goes the length , of asserting,; that if. there be. unseaworth'iness. at the commencement of .the voyágé, and the defect is.-cured.before loss, .-'a-subsequent loss is recoverable under the policy. This is an important -doctrine,- and- well worthy of discussion, whenever it conies directly in .judgment; :
 

 •The likev answer may be .given to the. point of deviation.. This Court cannot intend; that, here t^iere w,as' any unnecessary delay in the commencement or course of.the voyaged The delay, for the ¡want of papers, may haye .beén.'entirely justifiable; and-indeed may have corduced 'to'an earlier inception pf -the- voyage, by putting the sb p in a-, situation to depart at a. inoment’s.-warning. The-usage of trade may bp -generally, pr at least in that particular part, to get the ship under.weigh ás-in .this-.case, and wait in the offing, until the master is ready to come onboard — and that usage may be notonly cbnvenient', and beneficial' to all parties, but absolutely necessary, in given cases,-from the nature of the port, and the-winds^and seasons. How then can this-Court undertake to decideras matter of law, apparent upon the record, that any delay, admitting, of such explanations, amounts to a deviation
 
 l
 

 .The next point is the omission of Coiron to. communicate
 
 *185
 
 information of the loss to his agent, so as. to countermand the order for insurance... The contract'of insurance has been said to be a contract
 
 uberrimee
 
 fidd, and the principles which govern it, áre those of an enlightened moral policy. The undjgrwritér must be presumed to act upon the bel’ef, that the party procuring insurance, is not, at the time, in possession of any facts, material to the risk which he does not disclose; and that no known lofes: had occurred, which by reasonable diligence might have been communicated to him. If a,party,having . secret information, of a loss, procures insurance,, withi out disclosing it, it is a manifest fraud, which avoids the policy. If,- knowing that his agent is about to procure insurance, he withholds -the same information for the purpose of misleading the underwriter, it is no less á fraud; for under such circumstances,, the maxim applies,
 
 qúi fadt per
 
 alium,
 
 fctdt per sé.
 
 Kis own knowledge,- in such a case,' infects the act' of his agent; in the same manner | and to thé same extent, which the knowledge of the agent- himself wpuld do. And even if there "be no, intentional fraud, still the underwriter has á right to a disclosure of all, material facts, whiph it-was in the power of the party to communicate by ordinary means;'.and the omission is. fatal to the insurance. The true principle- deducible from the authorities .on this subject is, that whére a party orders insurance, and afterwards receives intelligence material to the risk, or has knowledge .of-a loss; he ought to com? municate it to the agent, as soon as, with due and reasonable, diligence, it can be communicated; for the purpose, of countermanding .the-order, or laying the circumstances before the'underwriter. If he omits so to'-do, , and by.dife and reasonable diligence the (information might have been dbmmunicated, so as to- have-countermanded the-insurance, the policy* is void. This doctrine4s supported by the English as well, as the American authorities, and párticularíy by Watson vs. Delafield, (2 1
 
 John. R.
 
 152. 2
 
 Caines’ R.
 
 224. 2
 
 John. R.
 
 526;) where most of the early-oases-awe collected, and commented-upon; and. it is'well summed up by M-r. Phillips,, iji his treatise oni -insurance, (p.
 
 96.)
 
 Wé do .not go over the cases at lárge, because-there is¡ no controversy as to the general .result. The only matter for observation is, whether the- rule as to’ diligence; may not,, in certain.-cases, be somewhat more strict, so-as -to require, what in Andrew
 
 vs.
 
 Marine Insurance Company, (9
 
 John. R.
 
 32,) is called .“extreme diligence;” or what in Watson vs. Delafield is left open for discussion, as extreme diligence; the duty. of communication, where the countermand may not only
 
 probably bui.possibly
 
 arrive in season. We think, howéver,thattheprincipleoftherule requires only dueand reasonably diligence, to be judged of under all the circumstances of
 
 *186
 
 each.particular case; and that the expressions thrown out in the, cases'above mentioned, were, not so mtich intended' to point out a' stricter rule, as, to intimate, that there might be cases, in which a very prompt effort for communication might. be- fairly deemed not due and reasonable diligence, as where the loss takes place very near the port, at which the insurance is to be made, and the'means .of communication,by mail or otherwise, are regular or numerous;'or where, from the lapse of time, and the date of the order for insurance,, the party cannot but feel, that-every moment’s delay adds many chances in favour, of the insurance being made before knowledge of the loss. ■ Under such circumstances, in proportion as the delay would properly give rise to stronger suspicion-of intén'tional concealment, the, duty of prompt communication would, naturally seem to press upon the party a more vigilant diligence. The case of Wake
 
 vs.
 
 Atty, (4
 
 Taunton’s R.
 
 494,) lays down no new rule; but merely applies the old one, to circumstances, somewhat nice and peculiar in'their presentation.
 

 What constitutes due and reasonable diligence in cases of this nature, is principally matter of fact for the consideration of a jury. When, indeed, all' the'facts are given, and the inferences deducible therefrom,'the'question, ihay resolve itself into a mere question of law. But it is, in general, impossible to lay down a fixed, rulé on the subject, from the almost infinite variety of circumstances which.may affect its application; much must depend upon the means of communication, the situation of the parties, the knowledge of conveyances, the fair exercise of discretion; as to time, mode, and pi ape of conveyance, the course of trade, and nature of the voyagé, and the probable chances of the countermand being effectual. All these are matters of fit inquiry before the jury, and must; from their very, nature, apply with very different force to "different cases.
 

 To bring these remarks home tp the present case,'mere are certainly circumstances, which! deserve the most careful consideration of a jury upon the point of due' diligence. The loss occurred at no given distance from the port of Havana; and if lettersr had been sent, ashore at that port, there'is strong reason to believe, that they could have reached Mr. Stoney in time for a countermand, and at ail events, if the loss had been made generally public at the Havana,' the news might have reached Baltimore before the insurance. .But the record does nót contain facts enough to establish a want of reasonable diligence on the part of Mi*. Coiron. It is no where stated that he was in a situation tc make such a communication, or that he knew of the mate and crew being landed, or .that vessels were about to depart for the United States from Havana-. Nor is it. shown, whát were the medís and facilities of communica-
 
 *187
 
 tkm, in the course of trade and voyages, between that port and the United States, regular dr irregular, from which we might deduce his knowledge of these means and facilities. Nor ik it shown, that the parties contemplated a stoppage off the Havana, so as to put him upon diligence in writing; nor that this mode of conveyance of news was more certain, or quicker than others, which might have been resorted to, in the ordinary course of the voyage of the ship.’Trumbull, to' New-Orleans. We may indeed conjecture how these matters were, by general surmise or personal information; but judicially we can know nothing’beyond what the record-presents of the facts; yet, all these circumstances must or may be material to the point of due diligence. In their very essence, they are matters of fact, and hot conclusions of law.
 

 The opinion, therefore,, to which the learned counsel wish to conduct us, that the-policy is void, because there has been gross negligence in not countermanding the order for insurance; is one, to which, upon this record, we cannot judicially arrive. It would be assuming the rights and exercising the functions of the jury upon matters not proved, or wholly indeterminate in their own nature. This ground for maintaining the instruction of the Circuit Court, must then be abandoned.
 

 The next point, is the omission in the letter of the 20th October, of any mention of the time of the. vessel’s sailing. This is put to the Court lii a double aspect;-first, as the concealment of a material fact, and secondly, connecting the language of the letter with the accompanying circumstances, as a virtual reprer sentation that the vessel was not then ready or about to sail on the voyage.
 

 Whether this omission in the letter was merely accidental, or with design to mislead' the underwriters; and whether, if so designed, it had the effect, (which, upon the testimony in the case, would-be a matter of serious doubt,) it is not now necessary to inquire. If accidental, it would not prejudice the insurance, unless material to the risk;.if fraudulently intended, it might not in fact mislead; and whether fraudulent or not, was matter of fact for the jury. That there was no virtual representation as to the time of sailing, ■ seems to us conclusively established, by the language, of the letter of Colonel Tenant, requesting insurance., He there says “He (Coiron) writes from Havre, under.date of the 20th October; but does not say, when the brig would sail.” Now, this letter, in-direct terms, negatives any intention to represent any particular time of sailing.1 It leaves the question freely open to the underwriters, either for further inquiry, or for. any presumptions most' unfavourable to the assured. The natural result ought to be, that the underwriters should calculate the time of-sailing as very
 
 *188
 
 near the date of the letter^ so as .to ask' a premium equal to the widest range of risk, from the intermediate lapse of time. The underwriters-had no right to-presume, that ihe ship-would sail at- some future indefinite period, and to bind" the assured to-that, presumption. 'The letter told them in effect, that the assured would bind themselves to no --representation as to the time of sailing; but asked for'insurance whenever the ship might- sidl, be it on- that day, or any future day. In this view, the-point ás to representation vanishes; and the dike consideration wcuid.y in a great measure, dispose of that of concealment '
 

 But the question, as'to this latter point,-, has been argued at the bar upon much more broad and comprehensive principles; upon which it seems proper for this Court to express an opinion, especially as this case may again undergo the considera- ■ tion of a jury.
 

 It is admitted, that a concealment, to be fatal to the ins urance, must be of facts material to the risk; and, certainly, of thisdoc-trine,-there cannot at this time be any legal doubt. It is further admitted, (and so is the unequivocal language of the authorities,) that generally, the materiality of the concealment is a question of fact fo.r- the jury. But it is said-,, that there are exceptions from'the-rule.; and that concealment of the time of sailing belongs to the glass of exceptions, and is a question of law for the exclusive decision of the Court. It.is necessary to maintain this position in- its full extent, to extricate the present case from, its pressing difficulties'; and if this shall be successfully ihade out, it will still remain.-to be decided, whether-the facts stated in the record, are sufficient to enable the Gou,rt to-pronounce the conclusion of-law.
 

 That- the time' of sailing is often very material to the risk, cannot be denied; that it is always so, is a proposition that-will scarcely be asserted, and certainly has never yet been- successfully maintained. How far it is so, must essentially depend upon the nature and length of the voyage, the season of the year, the prevalence of the winds, the conformation of the coasts; the usages of trade as to navigation, and touching and staying at-port, the objects of the enterprise and other circumstances, por litical and otherwise, which, may retard or advance the general progress of the voyage.' -The-material ingredients of all such' inquiries, are mixed-up with.nautical skill, information, and experience; and áre to be ascertained in part, upon the testimony of maritime persons, and are in no sense 'judicially cognizable as matter of-law. The ultimate fact-itself, ..which is the test of materiality, that is, whether the risk be increased- so as‘to-enhance .the premium; is, in many cases, an-inquiry dependent upon the judgment of underwriters and - others, .-who are conversant with the subject of insurance. In. this very case,
 
 *189
 
 the introduction of testimony was indispensable, to 'show the usual length of the voyage; and it was quite questionable, whether) in a just sense, the-vessel could be deemed a missing vessel, at the time of the insurance. Upon such a point; it would not be a matter of surprise,.if different’Underwriters should arrive at different results. In the nature of the'inquiry, then, there is riotHog to distinguish the time of sailing of the ship, from any otner fact, the representation of concealment of which is supposed to be máteriál to the risk. ■■ It must still be resolved into the same .element. .'
 

 It has been said,, that .there is no cáse in which the materiality of the time of sailing has-been doubted, where the ship was abroad at' the time; whether this beso or not, it is-not important to ascertain, unless it could be universally affirmed, (which we think'it cannot,) .that the time of sailing abroad, must always-be material to the risk. If it may not always be material, the question, whether it .be so in the particular casé,-is to be decided upon its.own circumstances. Indeed,, we cannot perceive how the place of sailing, whether from a.home or foreign port, can make any-difference in the principle. The time of’ sailing from a home port, may be. material to .the risk, and if so, the concealment of it will- vitiate the policy; but whether material or not, opens the same inquisition into facts, as governs in cases of foreign ports. There may be less intricacy in conducting it, or less difficulty in arriving át a proper concia-'' sion,- but it is-essentially the same procéss.. The case, of Fort
 
 vs.
 
 Lee, (3
 
 Taunt. R.
 
 381,) did not proceed Upon, the ground, that-the time of sailing from a home port, was never material to be communicated'; but, that under the -circumstances of that* case, the" underwriter, if he wished to know .whether.'Ijie ship had sailed, ought to have made inquiry-. * It was a mere application to the-discretion, of' the Court to'grant a new. trial, where the plaintiff, had obtained' a verdict, and. there was no pretence of any misdirection at the trial. In Foley
 
 vs.
 
 Mo-line, (5
 
 Taunt.
 
 145,) the.Court said, that thei’e was' rto .pretence for. the proposition; - as a. general rule,'that it was necessary to communicate to the underwriters' whether the yessels on which an insurance, was proposed, had. sailed or. not. - There might be circumstánces, that .would render that fact highly material; as if the ship wfere’aunissing ship, -or out of time. So that here, á denial of the prbpqsition.now asserted before us, was, in the most explicit terms, avowed and acted on.
 

 Two
 
 nisi prim
 
 cases.before Lord Mansfield, havebeen relied on, to establish the supposed exception to the general rule of eases, relative to ,the time of. the sailing of the ship; in which it is argued, that his lordship undertook to decide the point of imateriality, as -matter of law, arid' to give,, it as a
 
 rule
 
 to the
 
 *190
 
 jury. It is proper to remark, that little stress ought to be laid upon general.expressiohs of this sort, by Judges, in the course of trials. Where the facts are not disputed, the Judge often sug.-gests, in a strong and pointed manner, his opinion as to the materiality of the concealment, and his leading opinion of the conclusion to which' facts ought to conduct the jury. This ought not to be deemed an intentional withdrawal of the facts, or the inferences deducible therefrom, from the cognizance of the .jury; but rather as. an expression of opinion addressed to the .discretion of counsel, whether it would be worth while to proceed further in the cause. And the like expression in summing up' any cause to the jury, must be understood by them merely as á strong exposition of the facts, not designed to overrule their verdict, but to assist them in forming it. And there is the less objection to this course in the English practice; be-cause, if the summing up has had an undue influence, the mistake is put-right by a new trial, upon an application to the discretion of the whole Court. This is so familiarly known, that it needs only to be stated, to be at once admitted. It is with reference to these considerations, that the cases above alluded to should be examined.
 

 -Thefirst is Ratcliff vs. Shoobred, cited from
 
 Marshall on Insurance, p.
 
 290. It'would certainly seem, at the first view, that Lord Mansfield did decide that concealment was material. But even by Mr. Marshall’s report, brief as it is, it by no means appears that the
 
 materiality
 
 was in question-at the-trial, but only the
 
 effect
 
 of the concealment in avoiding, the policy. The same case is reported more fully and more accurately by
 
 Mr. Park on Insurance, p.
 
 290, where it is perfectly clear,.that the point of materiality was left to .the jury. “ The question- is, (said his lordship,) whether this be one"of those cases which is affected by misrepresentation or concealment. If the plaintiffs concealed any material part of the information they rer ceived, it is a fraud, and the insurers are not liableand the jury found a verdict for the defendant, under this direction. So that the point was left fully open to them.
 

 The next -case is Fillis
 
 vs.
 
 Berton, cited in
 
 Marshall on Insurance, 467,
 
 and reported also in
 
 Park on Insurance,
 
 292. The insurance was on a ship from Plymouth to Bristol; and it appeared, that the broker’s instructions stated that the ship was ready to sail on the 24th of December,- when, in fact, she had sailed on the 28d. Mr. -Marshall states, that Lord Mansfield ruled, that this was a material concealment and misrepresentation; but Mr. Park, from whose work the report is-professedly taken, uses no such expression. His words are. Lord Mansfield
 
 said
 
 this was a material concealment and misrepresentation; and the jury hesitating, he proceeded to expound to
 
 *191
 
 them the general principles of law on the subject of misrepresentation and concealment; and he seems to' have taken it, for granted, that the misrepresentation was material, (as from the short duration of such a. voyage might naturally be infer-ed,) and that the only point was, whether the ship had sailed or not. The same explanation disposes of the case of M’Andrews
 
 vs.
 
 Bell, (1
 
 Esp. Rep.
 
 373.) Indeed, in any other view, it would-be impossible to reconcile these decisions with the judgment pronounced by Lord Mansfield, and other Judges, upon more mature deliberation, when causes have been brought before them in bank.' Take, for instance, what fell-from the Court' upon the motion for a new trial, in M’Dowell
 
 vs.
 
 Praza,
 
 (Doug. R.
 
 247. 260.) Shirley
 
 vs.
 
 Wilkinson,
 
 (Doug. R.
 
 236.) Hodgson
 
 vs.
 
 Richardson, (1
 
 Bl.
 
 Rep. 289.) Littledale
 
 vs.
 
 Dixon, (4
 
 Bos. & Pul.
 
 151,) and Hull
 
 vs.
 
 Cooper, (14
 
 East, R.
 
 79.) In the case of the Maryland Insurance Company
 
 vs.
 
 Ruden’s Administrators, (6
 
 Cranch,
 
 338,) this Court expressed the opinion, that ‘‘it was well established; that the operation of any concealment on the policy, depends on its materiality to the risk, and that this materiality is a subject for the consideration of a jury.” That opinion was acted upon by the Court of Errors of New-York, in the case of the New-York Fireman Insurance Company
 
 vs.
 
 Walden, (12
 
 John R.
 
 513;) where Mr. Chancellor Kent, in a very elaborate judgment, reviewed the -authorities, and laid down the doctrine in a manner that merits our entire approbation.
 

 We think, then, that the exceptibn insisted upon at the bar, cannot, upon principle or authority, be supported; and that the question'of materiality of the time of the sailing of the ship to the risk, is a question-for the jury, under the direction of the Court,.as in other cases. The Court may aid the judgment of the jury, by an exposition of the nature, bearing, and pressure of the facts; but it has -no right to supersede the exercise of that judgment, and to direct an absolute verdict as upon .a contested matter of fact, resolving itself into a mere point of law. • If, indeed; the rule were otherwise, the facts in the record are not so full as to enable the Court to reach the desired conclusion. There is not sufficient matter upon which we could positively say, that the time of sailing was, in this case, necessarily material to the risk.
 

 For these reasons, the judgment of the Circuit Court must be reversed, and the cause remanded, with directions to award
 
 a..venire facias ne novo.
 

 This cause came.on; See., on consideration whereof, It is considered by this Court, that there is error in the opifiion of the Circuit Court, given to the jury upon the prayer of the
 
 *192
 
 ‘defendants’ counsel; — that upon the whole evidence in the case, as stated in the record, the plaintiffs are not entitled to recover, and that the verdict of the jury'ought to be for the defendant; that opinion having withdrawn from the proper consideration of the .jury, matters of fact in controversy between the parties.
 

 It is therefore further considered and adjudged, that the judgment of the said Circuit Court, in this-case,, be, and the same is hereby reversed; and that the cause be remanded to the said Circuit Court, with directions to award a
 
 venirefacias de novo.