## IRA STANLEY *vs.* *Proprietors of* BRUNSWICK TONTINE HOTEL CORPORATION.

An authorized committee of a corporation by memorandum in writing, agreed that S. should occupy their hotel for one year at a stipulated rent to be paid quarterly in advance ; and that he should have the refusal of it for two suc-ceeding years, provided he kept a house satisfactory to the committee. No time was mentioned in the agreement when the occupancy was to commence, but it was fixed on the trial by the proof of both parties. *Held,* that this was a valid contract for a lease, and that the corporation were liable to pay the amount of the loss sustained by their refusal to comply with its terms.

Parol evidence, that the agreement was reduced to writing by the committee and delivered to S. in consequence of his statement to them, that he wished to have it in writing to show to a third person for a particular purpose, but to whom it was not shewn, was held not to destroy the right of action on the agreement.

THIS was an action of *assumpsit*, commenced on the 14th of *June*, 1834, on the following written instrument.

" *Mem.* The subscribers, a Committee of the Brunswick Ton-tine Hotel Corporation, agree that *Mr. Ira Stanley* shall occu-py their hotel for one year, he paying therefor four hundred dol-lars per year in quarterly payments in advance, and paying the in-surance and all the taxes that may be assessed on the same. And that he shall have the refusal of the house for the two succeed-ing years, the rent not to exceed five hundred dollars per year, and

the insurance and taxes, provided he keeps a house satisfactory to the Committee.         *John F. Titcomb,*   ⎫

                                     *Isaac Lincoln,*   ⎬ *Com.*

" *Brunswick, Jan.* 15, 1834.    *Jno. Dunning.*"   ⎭

It was admitted, that the instrument was signed by the persons whose names appear thereon, and that they were a majority of the committee duly authorized to act in the premises, and it was thereupon read in evidence.  At the time the writing was made the hotel was under lease to one *Pike,* which lease expired on the first of *June,* 1834.  The plaintiff proved, that before the first of *June,* he tendered to the committee one hundred dollars for the first quarter's rent, and demanded a lease ; and that the committee replied, that they had sold the house to *Col. Pike,* but did not require any sureties from *Stanley,* or give any other reason for refusing the lease.  He also proved, that before the first of *June,* 1834, the proprietors had leased the house to another person.  The defendants then proved by members of the committee, who had sold out their shares in the corporation, and who were permitted to testify, although objected to by the plaintiff, both on the ground of interest, and on the ground, that the testimony would vary the terms of a written contract, that there was much conversation about *Stanley's* having the house before the paper was signed — that the lease was to commence on the first of *June* following the date of the paper, and that *Stanley* was to have the house after *Pike's* lease expired on the first of *June,* 1834, if he succeeded in finding some one who would sell him the furniture necessary for keeping the house — that after the terms were agreed on and they were about retiring, *Stanley* requested some little writing to carry to the persons of whom he expected to have the furniture, that they might be satisfied ; and that the committee requested a person sitting by to write a paper, and that he wrote the paper declared on, which was signed by the committee and handed to *Stanley,* who was to shew it to *Jewett & Mudge,* of whom he expected to have the furniture. The same witnesses stated, that the terms mentioned in the paper were correct and according to the agreement, but said that the paper did not express the whole agreement, for that *Stanley* was to get some one who would agree to furnish the house.

They also testified, that the plaintiff agreed to give them notice within a week, whether he would take the house.

There was much testimony on each side to satisfy the jury, that the plaintiff could or could not have procured furniture, and that he did or did not give the committee notice of his intention to take the house within the week, or within an extended time alleged by the plaintiff to have been given by the committee. There was no evidence, that the plaintiff shew the paper to the person of whom he expected to obtain the furniture.

On the trial, before *Emery J.* the defendants contended, that no contract had been made by them with the plaintiff, and that the paper, though signed by the committee, was never placed in the hands of the plaintiff, as a completed contract, but merely as evidence of what they were willing to do on certain conditions, which were never complied with by the plaintiff. And they requested the Judge to give four separate instructions to the jury, which are recited in the opinion of the Court. The Judge declined giving these instructions, and gave the following.

That it was incumbent on the plaintiff to satisfy them, that the contract was truly and absolutely made with the proprietors, through their committee, for the occupancy of the house as the plaintiff had declared, and that the plaintiff had performed all that he was by this agreement bound to do.

That of the sufficiency of the evidence they were the exclusive judges.

That they would consider whether or not the time was extended, so as to give the plaintiff an opportunity to procure furniture; and whether from the testimony of *Mr. Mudge*, to whom application was made, the plaintiff could rely with propriety upon his aid to an extent answering the expectations of the parties, and whether it would be reasonable to suppose, that the parties expected the furnishing of this establishment was to be completed at once.

That if they believed the witness, it was proper for them to consider, that when the tender was made of the first quarter's rent in advance, no objection was then made, that notice had not been given, or claim made for suretyship, or reason assigned, excepting that they had disposed of it to another person. And

also, if they believed the witnesses, they might take into consideration, that the house was leased to another before the time when the plaintiff was to commence his occupation of it, if the agreement had been carried into effect, and the committee thus disabled from carrying their agreement with the plaintiff into effect. And the jury were instructed, that from these considerations, if proved to their satisfaction, they must draw such inferences, as they should judge were right.

The jury found a verdict for the plaintiff, which was to be set aside and a new trial granted, if the instructions given were erroneous, or if those requested by the counsel for the defendants ought to have been given.

*Mellen,* for the defendants.

It appears from the report, that our defence was, that the writing declared on was never completed, or delivered as a contract into the hands of *Stanley,* but for another purpose, and merely as evidence of what the corporation would do, if the plaintiff performed certain conditions stipulated, and which conditions he failed to comply with. Therefore the instructions, we requested, were on no *abstract question of law,* but upon a point of vital importance ; upon a question decisive of the cause.

The defendants complain, that the requested instructions were not given, as a legal guide, as to what constitutes a contract. *Smith* v. *Carrington,* 4 *Cranch,* 71.

The paper was a mere offer to make a contract on certain terms, and though delivered to the plaintiff, still not as a perfected or accepted contract. The plaintiff had no right to use the writing and attempt to avail himself of it, as a completed contract, when at his special request, it was drawn up and handed to him merely to show to the persons, of whom he expected to obtain his furniture by way of argument to induce them to befriend him, and when, if he could obtain assistance, he was to return and have a lease to commence long afterwards. This was not a contract so perfected, that an action can be maintained upon it. *Bailey on Bills,* 338, *note* 4 ; *Delauny* v. *Mitchell,* 1 *Starkie's R.* 439 ; *Barker* v. *Prentiss,* 6 *Mass. R.* 430 ; *Boutelle* v. *Wheaton,* 13 *Pick.* 499 ; *Skildry* v. *Warren,* 15 *Johns. R.* 270.

Whether upon the evidence in the case, this was a completed contract, was a mere question of law, and on that precise question, it is insisted, that we had a legal right to a distinct instruction, one way or the other ; but it was declined, and nothing equivalent to it was given. The instruction was only, " that it was incumbent on the plaintiff to satisfy them, that the contract was truly and absolutely made with the proprietors through their committee for the occupancy of the house, as the plaintiff had declared, and that the plaintiff had performed all that he was by this agreement bound to do." Now this is nothing more, than to say, that they would find for the plaintiff, if he had made out his case. The instruction given *does not touch the point or principle* on which it was requested; it does not give any light or guide as to the elements which compose a contract, but all was referred to the jury for their determination. We say we were by law entitled to the requested instructions. *Johnson* v. *Baker*, 4 *B. & Ald.* 439; *Ashberry* v. *Colloway*, 1 *Wash.* 73 ; 2 *Stark. Ev.* 474, *note; Fairbanks* v. *Metcalf*, 8 *Mass. R.* 230 ; 1 *Stark. Ev.* 333; *Murray* v. *Earl of Stair*, 2 *Barn. & Creswell*, 82; *Storer* v. *Logan*, 9 *Mass. R.* 55; *Barker* v. *Prentiss, before cited; Goddard* v. *Cutts*, 2 *Fairf.* 440; *Jeffries* v. *Austin*, 1 *Strange*, 647; *Bailey on Bills*, 340.

*Deblois*, for the plaintiff.

The first enquiry is, whether there is a contract found in the terms of the written instrument. It expresses very clearly what the parties were to do — that the corporation should give *Stanley* a lease of their hotel for the term of time mentioned ; that he should make certain payments quarterly and in advance ; and should pay the taxes and insurance. The contract for a lease is fully set forth and without ambiguity. The next enquiry is, was the paper delivered, as a completed contract ? It was in the plaintiff's possession, produced by him on the trial, and read to the jury without objection. The law presumes, that the party thus producing a paper has a lawful right to it; and the party questioning it must show, that it was wrongfully obtained. *Lonsdale* v. *Brown*, 3 *Wash. C. C. Repts.* 404 ; *Ward* v. *Lewis*, 4 *Pick.* 518; *Powers* v. *Russell*, 13 *Pick.* 69. All the evidence in the case shews, that the instrument was delivered to the plaintiff by

the committee voluntarily and understandingly, and the only attempt to escape from it is by introducing parol proof to shew, that on a certain contingency this actual delivery was to become no delivery. Such evidence is not admissible. The case of *Ward* v. *Lewis*, before cited, is directly in point.

The report shews, that the plaintiff's counsel seasonably objected to the introduction of parol evidence on the part of the defendants, to prove any conversation before or at the time of the making of the written contract. Such testimony is inadmissible. When the contract is put on paper, that is the only evidence of it. *Tayloe* v. *Riggs*, 1 *Peters*, 591; *Hale* v. *Jewell*, 7 *Greenl.* 435; *Boody* v. *York*, 8 *Greenl.* 272; *Kimball* v. *Morrill*, 4 *Greenl.* 368. The testimony, if it had any bearing, went to destroy the contract, and therefore was not admissible. *Hunt* v. *Adams*, 7 *Mass. R.* 518. In the case now in hearing, all the parol testimony introduced was of conversations before the instrument was written. If the objection we made was good, and the conversations ought to have been excluded, all the objections made in defence fall to the ground. They are wholly founded on this illegal testimony.

But if the evidence is properly in the case, we are to enquire, whether the instructions requested were properly withheld, and whether those given were erroneous.

It is not pretended, that there was any fault on the part of the plaintiff, in relation to obtaining the paper, other than his saying he wished to have his contract in writing to shew to *Mudge* and *Jewett*, and when obtained, that he did not shew it to them. The plaintiff had a right to ask to have the contract he had made, put in writing, that he might have the evidence of it; and if he had given ever so many reasons resting only in his imagination to induce the defendants to do their duty, it would not vitiate the contract. That was fairly made and drawn up under the direction of the defendants. This is a sufficient reason why the instructions requested ought not to have been given.

But in any view of the case, upon what facts were the court to charge? 1. Was this an absolute or a conditional contract. 2. If a conditional one, were the conditions complied with. On these subjects the Judge did charge, and no complaint has been

made, that the charge is erroneous. The charge was correct in itself and sufficiently full, embracing the whole case. If the instructions requested required more, or were different, they ought not to have been given. If they were in substance the same then the defendants have no cause of complaint.

*S. Fessenden*, on the same side, replied to the arguments of the plaintiff's counsel, and cited *Hathorn* v. *Stinson*, 1 *Fairf.* 224.

The action was continued for advisemement, and the opinion of the Court was afterwards drawn up by

EMERY J. — The first enquiry is, whether the witnesses *Cushing* and *Lincoln* ought to have been admitted. They both had divested themselves of the interest which they once had in the property before *June*, 1834, and declared they had no interest in the event of the suit. No solid objection remains to their admissibility.

Ought the instructions requested to have been given, and were the instructions which were given to the jury correct. The jury having found that the contract was truly and absolutely made with the proprietors through their committee for the occupancy of the house, as the plaintiff had declared, and that the plaintiff had performed all that he was by their agreement bound to do. And it being proved that before the occupancy was to commence, the property had been so transferred, that *Col. Pike* had obtained a commanding part in it, and the committee were then disabled to give a lease, and the jury have assessed the damages for the breach of the contract in not permitting the plaintiff to occupy the property, it becomes important to consider whether the Judge erred in refusing the first requested instruction.

Much discussion has arisen in the English Courts, as to what is a lease and what is only an agreement for a lease, because if it be a lease *there* a stamp of a higher denomination is required. And in *Poole* v. *Bently*, 12 *East*, 167, *Lord Ellenborough* says, that the rule to be collected from all the cases is, that the intention of the parties, *as declared by the words of the instrument, must govern the construction.* In *Woodfall's Landlord & Tenant, page,* 4, 5, it is said, it may be laid down as a rule, that whatever words

are sufficient to explain the intent of the parties that the one shall divest himself of the possession and the other come in to it for such a determinate term, whether they run in the form of a license, covenant, or agreement, are of themselves sufficient, and will in construction of law amount to a lease for years, as effectually, as if the most proper and pertinent words had been made use of for that purpose. A license to inhabit a house amounts to a lease.

If one license another to enjoy such a house or land for such a time, it is a lease. It is a certain present interest and ought to be pleaded as a lease. It may be pleaded as a license. If pleaded as a lease for years and traversed, the lessee may give the license in evidence to prove it. These words in an instrument, "be it remembered that A. B. hath let and by these presents doth demise," &c. were held to operate as a present demise, although the instrument contained a further covenant for a future lease.

The first instruction requested, was, that if on the evidence, the jury should be of opinion that the alleged contract declared on was placed in the hands of *Stanley*, for the purpose of shewing the same to *Mudge & Jewett*, as evidence that he should have a lease of the house, if he would furnish it, as he expected he should be able to do, but not as a completed contract, then they ought to return a verdict for the defendant. It would have been incorrect to give such an instruction, because it was proved, that the contract was made as stated. And the taking of it in writing was for the plaintiff's security. He might shew it, or might not, without affecting the validity of the contract, which was to be construed by its own terms.

It was requested secondly, that instruction should be given, that if they should be of opinion, that said alleged contract was placed in *Stanley*'s hand as an unfinished contract for the purposes abovenamed, and not to be a complete contract, unless he should give notice to the Directors or Committee, that he would furnish the house, then they ought to find for the defendant.

It was thirdly requested, that instruction should be given, that if they should be of opinion that when said alleged contract was placed in said *Stanley*'s hands, if it was not a completed contract, but was agreed not to be such unless notice should be given to

the committee in the time and manner above stated, then they ought to find for the defendants.

Substantially, the instructions requested in the second and third place, were given, in requiring the jury to be satisfied that the contract was truly and absolutely made, as the plaintiff had declared, and that the plaintiff had performed all that he was by their agreement bound to do, and directing their enquiry especially to the fact whether or not the time was extended, &c.

The fourth requested instruction was, that it was the duty of *Stanley*, to present the signed paper to *Mudge & Jewett*, for the purpose stated by him to the committee, and according to the condition on which he received it, and then give notice to the defendants within the time agreed on. It could not be material for the court to give a direction, as thus requested, because if *Mudge & Jewett*, or either of them, or any other person, according to the evidence had confidence in the plaintiff to aid him without seeing the paper, it was totally indifferent to the defendants. The plaintiff could do nothing without advancing the quarter's rent, which he tendered, and he was at the mercy of the defendants' judgment, whether he kept a house satisfactory to the committee.

The Court, in cases of this description, will examine the whole evidence with care and adopt the inferences which a jury might properly draw from it ; and if upon the whole case, justice has been done between the parties, and the verdict is substantially right, no new trial will be granted, although there may have been some mistakes committed at the trial. 1 *Peters*, 170, 182, *M'Lanahan & al.* v. *Universal Insurance Company*.

Upon the evidence, we apprehend substantial justice has been done. And judgment is to be rendered on the verdict.