Hon. PIERRE ADOLPH ROST.  
Hon. THOMAS SLIDELL, } *Associate Justices.*  
Hon. WILLIAM DUNBAR,

---

LAPENE & FERRE *v.* SUN MUTUAL INSURANCE CO. OF NEW YORK.

As a general rule, the warranty of seaworthiness during the whole voyage is the same, whether the insurance be on the ship, or on goods, and the underwriters are not bound to pay any loss resulting from that cause after the commencement of the voyage.

If there be unseaworthiness at the commencement of the voyage, and the defect is cured before loss, a subsequent loss is recoverable under the policy.

APPEAL from the Fifth District Court of New Orleans, *Buchanan, J. Roselius,* for plaintiff. *Maybin,* for defendant and appellant.

EUSTIS, C. J. This is an action to recover the sum of $8,000, the amount of merchandize shipped on board the schooner William C. Preston, and insured by the defendants for a voyage from New Orleans to the port of Brazos in the State of Texas. There was judgment for the plaintiffs, and the defendants have appealed.

The vessel in which the merchandize was shipped was of some fifty tons burthen, and lay at the Old Basin. The defence is, that she was not seaworthy, and that she deviated from the proper course of the voyage.

It appeared that the schooner left the Basin on the 2d of August, 1851, and from the difficulty in the navigation of the Bayou St. John, she did not get over the bar and leave the Picketts on her voyage until the 6th following. On Friday, the 8th, she put into the Bay of St. Louis for the purpose of obtaining water. She made sail, after taking in her water, on the 9th, and three days after, was burned off Breton's Island, and with her cargo totally lost. During the delay of the vessel at the mouth of the Bayou St. John, the Captain not knowing,

LAPENE & FERRE *v.* SUN MUTUAL INS. CO. OF NEW YORK. as he says, when there would be water enough to take her over the bar, left her on a visit to his father-in-law at the Bay of St. Louis, and only joined the schooner at about twenty miles from that place, and one or two miles from the Rigolets. Finding her short of water he put into the Bay of St. Louis in order to procure it.

The exertions of those on board to get the fire under being unsuccessful, she was abandoned, in consequence of the danger created by her having gunpowder and spirits on board; in a few minutes after she exploded, and everything on board, including the log book, was lost.

The case appears to have been tried in the Court below in such a manner as not to have elicited reasons for the judgment, or any statement of the grounds on which it was given.

There does not appear to have been any attempt to contradict or weaken by counter evidence the testimony of the plaintiffs' witnesses. A single witness was examined for the defence on a point about which there is no contest. The evidence has been much commented upon in this Court. It was believed by the District Judge, and has not been successfully impugned by the scrutiny before us.

The want of water was caused, as is said, by the negligence of one of the men in leaving open the cock of one of the pipes containing water, and, we think, the evidence establishes such a condition of necessity as authorized the delay and deviation at the Bay of St. Louis in order to procure it.

We think there is nothing in another ground of defence urged in this Court, viz: that the risk was unduly enhanced by their being gunpowder among the plaintiffs' goods. The invoice shows that some twenty kegs of powder were on board. We do not find any exception in the policy as to gunpowder. It is construed in the general terms "lawful goods and merchandize," under which the plaintiffs insured, and is an article notoriously suitable to the market to which the cargo was destined. It clearly comes within the word *cargo*, which is endorsed on the policy. See Duer on Ins., vol. 2, p. 444. It is contended that the schooner was not seaworthy, in a technical sense, because at the time she sailed on her voyage her captain was not on board. He was on board at the time she broke ground in the Basin on the 2d of August, and continued in her after her arrival at the Picketts. Finding she could not cross the bar without removing her cargo, he left her in charge of the mate on a visit to the Bay of St. Louis, as has been before stated. It is admitted in argument that she was unseaworthy in making sail in this condition without her Captain on board, and if a loss had happened while it continued, that the underwriters would not have been responsible; but it is urged that the effect of the unseaworthiness is not continued beyond the existence of the cause that produced it, and as the loss had no connection with this cause, but was from a peril insured against, the underwriters are bound to indemnify the insured.

As a general rule, the warranty of seaworthiness during the whole voyage, is the same, whether the insurance be on the ship or on goods, and the underwriters are not bound for any loss resulting from that cause after the commencement of the voyage. *McDowell & Peck* v. *the Memphis Insurance Company.* 7th Ann. Rep. and cases there cited.

*Lord Tenterden* in the case of *Weir & Aberdeen*, 2d Barnwell and Alderson, 320, asserted the law to be, that if there be unseaworthiness at the commencement of the voyage, and the defect is cured before loss, a subsequent loss is recoverable under the policy. This doctrine is understood to have been called in

question in the opinion of the Supreme Court of the United States, delivered by <span style="float:right">LAPENE & FERRE<br>*v.*<br>SUN MUTUAL INS.<br>CO. OF NEW YORK.</span> Mr. *Justice Story* in the case of *McLanahan* v. *The Universal Insurance Company.* 1 Peters Rep., 184. We delayed the decision in the cases of insurance on cargo by this vessel for the purpose of considering the possible objections to this just and reasonable principle. It has received the approbation of *Kent;* and *Judge Phillips,* in his work on Insurance has placed it beyond all question as a settled rule of American jurisprudence. This learned author thus states it.  This warranty (of seaworthiness) is not violated so as to defeat the insurance by a merely incidental, temporary deficiency at the commencement of the risk in fitness for the voyage that may be easily remedied, and is so in fact. There are many cases which have been decided on this principle. One was of the needle of a compass attracted by some iron work; another of a vessel being temporarily unseaworthy for want of sufficient ballast; another of a cargo so stowed as to cause the vessel to be out of trim; another of a vessel not having a pilot and yet getting safe over pilot ground. Phillips on Insurance, No. 726. The Courts in New York have decided in the same sense. In the case of the *American Insurance Company* v. *Ogden,* the Supreme Court of that State decided that the fact that a vessel was not supplied with anchors when she left port cannot discharge the insurers when the loss was sustained from an injury received from the winds and waters while the vessel was at sea, where it was totally immaterial whether she had one or two anchors, or none at all, so far as the injury is concerned. 15th Wendell, 532; 20th id., 287.

This temporary unseaworthiness, occasioned by the absence of the Captain from the schooner on her passage down Lake Pontchartrain and through the pass of the Rigolets, constitutes no defence to the plaintiffs' action.

Conceding that the loss of the water from the cask, which created the necessity for the deviation in putting into the Bay of St. Louis, to have been the consequence of the neglect of those on board of her, we consider the fact of deviation as being no defence to this suit. It is not proved that the neglect occurred during the absence of the Captain from the schooner. If it had been, a materially different case would have been presented. *Waters* v. *The Louisville Insurance Co.* 11 Peters, 224. Phillips on Insurance, 733 and 734.

There is nothing in this case which creates any suspicion which affects injuriously the plaintiffs, who were shippers of part of the cargo. At the same time the complexion of the facts which appear in evidence is such as to authorize us in expressing our regret that the case was not sifted to the bottom. So far as our action is concerned, however, we are bound to presume that the underwriters have left it in the situation the most favorable to their interests, and we must decide it, accordingly, on the evidence.

It is proper to observe that, under all the policies on goods shipped on board this vessel, the barratry of the master and mariners is one of the risks insured against.

The judgment of District Court is, therefore, affirmed with costs.