Cartter, C. J.,
stated the case and delivered the opinion of the court:
On the 1st day of October of this year the grand jury of this District returned into court a true bill of indictment against the defendant, charging him, in the technical language of the law, with the murder of one Samuel M. Cheeseman.
On the following day the defendant was arraigned, and to the indictment entered his plea of “Not guilty.”
On the 10th of October a jury was sworn. On the following day, after evidence, argument, and instruction, the jury rendered a verdict of “ Guilty.”
*242 On the 15th of the same mouth the defendant, by his counsel, moved the court for‘a new trial, and filed his reasons therefor.
As appears of record, the reasons alleged were:
1st. The misconduct of one of the jurors who tried the case.
2d. That the verdict was contrary to the evidence.
In support of the first ground the defendant offered two affidavits, which are of record.
Against the motion the United States attorney filed the affidavit of the juror sought to be impeached, together with •others, tending to impeach the veracity of the persons making the affidavits offered in support.
On the 19th day of October the motion for a new trial was overruled, and the defendant sentenced to be executed.
From the judgment of the court in overruling a motion for a new trial, on the 22d of October the defendant appealed to the court in general term.
The second cause assigned for error is not insisted upon by counsel, or in any manner sustained by the record, and may be disposed of without further comment.
With reference to the first assignment of error, viz, “ The misconduct of one of the jurors who tried the case,” it is objected by the United States that the point made is not the subject of error, and, therefore, this court is without jurisdiction in the matter.
Eeference to the act of July 7, 1838, establishing the criminal court of the District of Columbia, and the act of February 20, 1839, being an act to amend an act establishing the said criminal court, shows the legal relations of the criminal court to the circuit court, as they pre-existed the organization of this court, where it will be found that the only relief to a party convicted of crime in the criminal court was by writ of error to the circuit court, upon the allowance of the court or one of the justices thereof.
The jurisdiction of these respective courts was transferred to this court by the organic act passed March 3, 1863, to be exercised within the limitations of judicial authority theretofore existing.
The only change manifested in the acts transferring the *243 jurisdiction is to be found in the mode of practice; appeal, as a necessity, being substituted for writ of error, inasmuch as a court cannot issue a writ of error to itself. The appeal thus provided for merely instituted a new method by which the defendant might be heard in error.
If we are right in this view, and of it we have no doubt, the question presented here is simply whether the judgment of the justice holding the criminal court, in overruling the motion for a new trial, is a proper subject of review in this court.
In resolving the question, we are first met with the hitherto determination of the question within this jurisdiction.
Chief-Justice Oranch, in the 4th volume of his Circuit Court Eeports, announces as the opinion of the court that “ a motion for a new trial is an application to the sound legal discretion of the court,” and decided that it was not the subject of error.
This decision was announced as early as 1832, and does not appear to have been since disturbed. As far as this jurisdiction, therefore, is concerned, the question has heretofore been treated as ves adjudieata.
Further examination advises us that the jurisdictions presiding over and kindred with this jurisdiction have uniformly held the same doctrine.
The judicial authority of Maryland, through which this jurisdiction largely derives its common law, and judicial interpretation, has uniformly held the doctrine announced by Chief-Justice Cranch, as will be found by reference to the decisions of the court of appeals, in the 5th volume of Harris and Johnson’s Reports, in the case of Anderson vs. The State, 174, where the court uses this language:
“We are decidedly of opinion that the refusal of an inferior court to grant a new trial cannot be assigned for error. The law has been considered as settled in this country beyond all controversy, and no case can be found in England where a superior tribunal acting on the transcript of the record itself, brought before them by a writ of error, has entertained such a jurisdiction.”
The same doctrine was repeated in Wall vs. Wall, 2d Harris and Gill’s Reports, 81.
*244 As in the courts of Maryland, so in the Supreme Court of the United States, we find the doctrine announced, beginning with the 6th volume of Cranch’s Reports in the case of the Marine Insurance Company of Alexandria vs. Hodgson, and continuing down, through a uniform series of decisions, to the case of Cheang Kee vs. The United States, reported in 3 Wallace, supervening the period from 1810 to 1865.
The reasoning rendered by the Supreme Court of the United States furnishes the key to the uniform judgment of that tribunal. In the case of McLanahan vs. The Universal Insurance Company, reported in 1 Peters, 181, Story, J., says :
“It is to be considered that these points do not come before this court upon a motion for a new trial after verdict, addressing itself to the sound discretion of the court. In such cases the whole evidence is examined with minute care, and the inferences which a jury might properly draw from it are adopted by the court itself. If, therefore, upon the whole case, justice has been done between the parties, and the verdict is substantially right, no new trial will be granted, although there may have been some mistakes committed at the trial. The reason is that the application is not matter of absolute right in the party, but rests in the judgment of the court, and is to be granted only when it is in furtherance of substantial justice.”
Thus it is seen that this court, and the courts in intimate advice and authority over this tribunal, have held uninterruptedly the doctrine that we are without jurisdiction, notwithstanding it is urged with much ingenuity and painful earnestness that the court disregard these authorities and adopt the conclusions of the highest tribunals of several of the States in their stead.
The court does not feel at liberty to do it. Without reviewing these authorities in detail, it may be remarked that many of them are the offspring of local legislátion, and do not result in any well-defined and definitely-settled principles.
Some of them present extreme cases, where the action of the inferior court disclosed a fraud upon justice. We are not prepared to say that, in case of abuse of judicial disere *245 tion so palpable in its character as to involve corruption or imbecility, the matter would be without a remedy.
From this class of extreme cases the authorities presented entertain jurisdiction to the extent of reviewing very doubtful cases, until by this process the superior court is made to be substituted for the court trying the case, without any' legal knowledge of the facts upon which it was tried. To these doctrines this court cannot consent; and these decisions, when viewed in the light of the cases in direct authority with this court, cannot be entertained.
Passing from the question of jurisdiction, without further comment it is due to candor for the court to say that had the motion been properly made to this court, had we the power to determine it, we should have been compelled to decide as did the court below.
The record presented to us furnishes evidence in support of the motion, that, one of the jurors being sworn touching his fitness as a juror in the case, and having declared he was without bias or prejudice, and that he had not formed or expressed any opinion, was. accepted and sworn as a juror; that subsequent to the rendtion of his verdict affidavits were made by one Potter and one Evans tending to show that previous to the trial the same juror had declared to them that this court and jury would convict them all 5 that Wood would share the same fate as Jenkins, alluding to Jenkins who had shortly before been convicted of murder, which affidavits were denied by the affidavits of the juror, and the further affidavits of eight witnesses that Potter and Evans were not worthy of belief under oath.
In its light it will be seen that the claim of the defendant was that the juror had said that the defendant would be tried, and would meet the fate of Jenkins; asserting what would be done rather than what he would do, making a doubtful claim in itself considered, and a new trial in the light of the contradictory and impeaching testimony more .than doubtful.
It follows that the appeal should be, and is, dismissed.