Tillou and others *vs.* The Kingston Mutual Insurance Company.

The holder of a mortgage has an insurable interest in the mortgaged premises. And the consent of the insurers that a policy previously issued to the owners of the property, may be assigned to the holder of the mortgage, will be deemed in the nature of a contract with him, by which he becomes insured, to the amount which the assignment was intended to secure.

And although the original parties assured may, by a violation of some of the conditions of the policy, after an assignment of the policy for a part of the amount insured, forfeit their rights to the residue, they can not, *it seems*, by any act of theirs, defeat the rights of the assignee, under the policy.

A mere statement, in a notice of alterations, by the assured, that a machine put up by them upon the premises, is designed "for burning hard coal," will not be considered as a covenant or agreement that it shall be used with hard coal; or as binding the assured not to use other fuel, should it become necessary, and it can be used without increasing the risk.

Where several owners of property are jointly insured, a sale by one of the owners, of his interest in the premises, to the other owners, is not such an *alienation* of the property as will avoid the policy, under a provision in the act under which the insurance company was incorporated, declaring that when any property insured with such company, shall be "alienated by sale or otherwise," the policy shall become void.

This was an action of assumpsit, brought by Tillou, Doty and Crouse, upon a policy of insurance for $2500, dated November 1, 1842, upon a grist mill. The defendants pleaded the general issue, and gave notice that they would give in evidence, and insist, in bar of the plaintiffs' recovery, that after the execution and delivery of the policy, and before the loss occurred, viz. on the 4th of April, 1847, Crouse, one of the plaintiffs, who was one of the owners of the property insured, alienated and sold his interest in such property, to Tillou and Doty, the other owners; contrary to the provisions of the charter of the company and the by-laws and regulations thereof; by reason of which the policy became void and of no effect, and the defendants exonerated from any liability thereon. The cause was tried at the Dutchess circuit in December, 1848, before Justice Barculo,

---

Tillou v. The Kingston Mutual Ins. Co.

---

The jury found a special verdict, containing the following, among other facts. That the defendants duly made and executed the policy, and delivered the same. That the policy was assigned to David Ketcham by the assured, on the 1st of May, 1844, by an instrument executed by them, and indorsed upon the policy in these words: "Know all men by these presents, that Carlisle W. Tillou, Oliver W. Doty and Tilly Crouse, the insured in the within policy named, for and in consideration of the sum of $2000 to them paid by David Ketcham, of Dutchess county, the receipt whereof is hereby acknowledged, do assign and transfer unto the said David Ketcham, his heirs and assigns, the within policy of insurance, and all sums of money, interest, benefit and advantage whatsoever now due, or which may hereafter arise by virtue hereof; to have and to hold the same unto the said David Ketcham, his heirs and assigns forever: this assignment however, to be void on the payment of the said sum, with interest, according to the conditions of a certain mortgage executed by said Tillou, Doty and Crouse, to Eliza B. Hossack, recorded in Dutchess county clerk's office, December 30th, 1843, in liber 58 of mortgages, page 372, &c. and assigned by said Eliza B. Hossack to said David Ketcham, and to be subject to the approval of the company," &c. That the defendants consented to said assignment in the words following: "The Kingston Mutual Insurance Company do hereby consent that the interest of Carlisle W. Tillou, Oliver W. Doty and Tilly Crouse in the within policy, on the terms above set forth, be assigned to David Ketcham, his heirs and assigns. Kingston, May 9th, 1844.    John K. Trumpbour, Sec'y."

Which consent was indorsed on said policy. That the defendants also received from Tillou and Doty a notice of alterations in the words following:

"Hyde Park, May, 17th, 1847.

To the Kingston Mutual Insurance Company, Honored Sirs, we have put a kiln-drying machine in our mill, it is a cylinder well secured in brick arch, and well secured with a chimney carried out the top of the mill; *it is for burning hard coal.* It is 9 by 4 feet, four feet high, and no chance for the least par-

ticle of fire to escape. It is not so much risk as a stove and pipe to the same. We have not started it yet, and want you to act upon it, and let us know immediately.

    Yours in haste,    Tillou & Doty."

Upon which the said defendants gave to the plaintiffs the consent or certificate following : "Secretary's office of the Kingston Mutual Insurance Company. I hereby certify that a statement of certain alterations as made to the flouring mill insured in policy No. 599 to Tillou, Doty and Crouse, has this day been received at this office, which are adjudged to increase the hazard of said mills and machinery five per cent ; and the increase of premium having been secured thereon, said policy is hereby confirmed unto the said Tillou, Doty and Crouse, the same as though said alterations had not been made.

     J. K. Trumpbour, Sec'y."

That the grist mill and machinery mentioned in said policy was consumed by fire, on the 28th day of July, 1847, and was worth between 6 and 7 thousand dollars. That the notice and preliminary proofs required by the conditions of said policy were duly made and served on the defendants. That on or about the first day of May, 1847, the said Tilly Crouse sold his interest in the premises insured, and conveyed the same to the other remaining partners, Tillou and Doty ; they the said plaintiffs up to that time, being partners in the milling business. That said Tillou and Doty at the time of taking Crouse's share, applied to William Shaw, one of the directors of said Kingston Mutual Insurance Company, and requested to know if it would avoid the policy, who replied that he did not consider such conveyances an alienation. That the kiln drying machine was designed for coal, but was used with wood, as a general thing ; and that no fire had been in said machine for 36 hours or more before the burning of said mills. That the amount due on $2000 for interest and principal from three months after serving the preliminary proofs, was $2146,52. That the amount due on $2333,33, being the original interest of Tillou and Doty, including the amount assigned, and exclusive of Crouse's, was $2504,35. That the amount due on $2500, the whole amount of such

insurance, was $2687,15; that the amount due on $1666,66, said Tillou & Doty's interest if they owned two-thirds of said policy, was $1778,08.

*Jno. Thompson*, for the plaintiffs.

*Jas. Forsyth*, for the defendants.

*By the Court*, BARCULO, J. The first question to be considered is the effect of the assignment of the policy of insurance to Ketcham to secure a mortgage of $2000.

This assignment was made with the express consent of the insurance company, endorsed on the policy. Ketcham, at that time, as assignee of the mortgage, had an insurable interest in the premises. The consent of the company must therefore be deemed in the nature of a contract with Ketcham, by which he became insured to the amount of $2000. Consequently, although Ketcham might perhaps work a forfeiture of his rights under the policy, by a violation of some of its conditions, and, although the original parties assured might also forfeit their rights to the residue of the amount insured, I apprehend that they could not by any violation of the terms of the policy, defeat the rights of Ketcham under the policy. If, therefore, it be conceded that, as between the original parties, the policy has become void, it would still sustain the recovery to the extent of the $2000.

But I am not prepared to say that there has been any forfeiture whatever. The position maintained by the defendants' counsel, that the policy was avoided by the use of wood instead of coal in the kiln-drying machine, is clearly untenable. For there was no covenant or agreement on the part of the assured that the machine should be used with hard coal. It was a mere statement that the machine was designed "for burning hard coal," without binding the plaintiffs not to use other fuel, if it should become necessary; provided the risk was not thereby increased. In this case the jury do not find that the change increased the hazard, nor is it pretended that there was any

fraud in the representation; and I think it would be going much too far to hold such a deviation from the representation sufficient to avoid the contract. (4 *Hill*, 329.)

A much graver question arises upon the conveyance by Crouse of his interest in the premises to the other two plaintiffs. It is claimed by the defendants' counsel that this constituted an *alienation*, within the 7th section of the act, which avoids the policy. That section declares, "that when any property insured with this corporation shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors of said company to be cancelled." (*Laws of* 1836, *p.* 44.) Under this provision, if the parties had united in a conveyance to a stranger there would be no doubt of its avoiding the policy. If Crouse had conveyed his interest to a stranger the policy would cease to operate as to that share, at least. But it seems to me that the conveyance by Crouse to his copartners stands upon a different *footing*. It was not strictly speaking an *alienation*, i. e. a transfer from one to another. It was a change of interests among joint owners. No stranger is introduced—no addition to the number of the assured is made. One copartner retires from the concern and sells out his interest to the others. The company, therefore, run no risk of having careless or improvident persons substituted in the place of the original parties with whom they dealt, to guard against which it was a principal object of the statute. It is not, I apprehend, every transfer of title which is to be deemed an *alienation*. Suppose, for instance, that these three parties had been joint tenants, and Crouse had died, by which the whole estate would vest in the survivors, could it be pretended that this was an alienation? Or suppose that, being tenants in common, Crouse had died and his interest passed to his heirs, although new persons would be introduced, still I am much mistaken if this could be deemed an alienation within the act. Even if the estate should pass by will, instead of descent, I doubt whether it could be held to be such an alienation as would work a forfeiture.

It seems to me that our courts have gone quite far enough in giving a strict construction to clauses of forfeiture in these insur-

ance acts. A more liberal construction would, perhaps, promote the ends of justice quite as well. In this case I think the spirit of the law has not been violated ; and that we are bound to say that the policy has not been rendered void by the transfer of Crouse's interest to his copartners.

I am aware that some of the authorities seem to militate against these conclusions. Thus the case of *Carpenter* v. *Washington Ins. Co.* (16 *Pet.* 495,) may be considered an authority for saying that an assignment of the policy as collateral security does not place it beyond the reach of forfeiture by the misconduct of the assignor. But that case has never been law in this state. ( *The Traders' Ins. Co.* v. *Robert*, 9 *Wend.* 404.)

Nor is the case of *Howard* v. *The Albany Ins. Co.* (3 *Denio*, 301,) a decisive authority to show that a conveyance by one joint owner to another avoids the policy. For that policy was not made under the act in relation to mutual insurance companies: nor is any opinion given in favor of the decision, but only a dissenting opinion by Justice Bronson. On the other hand, in the case of *McMaster & Bruce* v. *The Westchester Mutual Ins. Co.* (25 *Wend.* 379,) the learned circuit judge expressed the opinion that a conveyance by one' joint owner to another was not an *alienation* within the meaning of the act in question ; which doctrine was not repudiated by this court, although the case was decided upon other grounds.

There is another light in which this case may be viewed. The section in question provides that the grantee of any insured premises, "having the policy assigned to him, may have the same ratified and confirmed to him for his own proper use and benefit, upon application to the directors, and with their consent, within thirty days next after such alienation," &c. This shows that although the statute declares that an alienation shall render the policy *void*, it, in fact, merely renders it voidable at the election of the company, who may elect whether it shall cease to operate or be ratified and confirmed to the alienee. The act does not direct how the ratification and confirmation shall be made or evidenced. Now, in this case, Tillou & Doty are the grantees of Crouse : they may also be deemed the assignees of

his interest in the policy, as the conveyance of the premises would *ipso facto* vest in them the right to the insurance moneys, as between them and Crouse. Tillou & Doty were therefore in a position to demand and obtain from the company such ratification and confirmation if it was necessary for them. Whether this was done or not does not distinctly appear. But it appears that on the 8th day of July, 1847, the company, by their secretary, gave to Tillou & Doty a certificate stating that "due notice had that day been received from Messrs. *Tillou & Doty* of additional insurance having been effected for $1000 on *their* flouring mill," &c. This looks very much like a recognition, on the part of the company, of Tillou & Doty as the owners of the premises; and although it may not in itself amount to a ratification or confirmation within the statute, it is nevertheless an *item of evidence* from which a pretty strong inference may be drawn that such ratification or confirmation had been made. How far this may be a proper consideration upon this special verdict it is not necessary to inquire; as we prefer to rest our decision upon the broad ground that here has not been such an alienation as avoids the policy.

Judgment for the plaintiffs.

Oneida General Term, January, 1850.  *C. Gray, Pratt, Gridley, and Allen,* Justices.