## BOWDITCH MUTUAL FIRE INSURANCE COMPANY *vs.* ISAAC WINSLOW & others.

This court have power, under Rev. Sts. *c.* 99, § 19, to grant a review of their judgment, affirming a judgment of the court of common pleas to which exceptions were taken and accidentally omitted to be entered in this court, on being satisfied that the exceptions affect the substantial merits of the case.

An application to a mutual fire insurance company for insurance on a building stated that it was a just, full and true exposition of the condition, situation, value and risk of the property to be insured, so far as material to the risk; and that the applicant, in case of insurance, held himself bound by the by-laws of the company : The policy also was made subject to the provisions and conditions of the by-laws : The by-laws provided that any policy should be void, unless the true title of the insured should be expressed in the application; and that the applicant should be liable for the representations of any agent through whom the application should be made. *Held,* that the failure to disclose a mortgage for $800, in the application, avoided the policy, and was good cause for granting a review of a judgment thereon against the company; although a jury had found that the misrepresentation was not material to the risk, and there was evidence tending to show that the mortgage was disclosed to the agent of the company by whom the application was filled up.

*It seems,* that an assignment of a policy issued by a mutual fire insurance company, made, with the assent of the company, to a mortgagee of the property insured, does not make the assignee, until he has given a new deposit note, "the insured," within the meaning of a by-law of the company, suspending the risk on the policy in case of the neglect of the insured to pay an assessment when duly demanded of him.

The expenses of printing or copying the points and authorities required by the rule of this court at the argument of cases upon the law docket cannot be taxed in the bill of costs.

PETITION, filed at March term 1852, for a review of a judgment recovered in this court by the respondents, in an action brought by them against the petitioners upon a policy of insurance issued by the latter. Hearing before *Bigelow,* J., who made the following report of the case :

" At the trial of said action in the court of common pleas, at April term 1851, after the plaintiffs had put in their case, and some evidence had been introduced by the defendants, the defendants' counsel requested the presiding judge to instruct the jury that, upon the evidence then in the case, the plaintiffs could not maintain their action ; but the presiding judge refused so to instruct the jury, and proposed to instruct them that they would

be warranted in law in finding a verdict for the plaintiffs ; where-upon the defendants' counsel declined to argue the case to the jury, and submitted to a verdict for the plaintiffs, and alleged exceptions to these rulings and instructions. Judgment was rendered on the verdict, and the defendants' exceptions were allowed and signed by the judge ; but the defendants did not enter them in this court at November term 1851 ; and on the last day of said term the plaintiffs entered the case in this court, and the court, upon the plaintiffs' complaint, affirmed the judgment of the court of common pleas ; and this petition was brought for a review of the judgment of this court, so affirming the judgment of the court of common pleas.

" Upon the evidence introduced at the hearing of this petition, the presiding judge was of opinion that a review should be granted, upon condition, however, that the case should be heard on the bill of exceptions, as if it had been duly entered by the petitioners ; and that the petitioners pay to the respondents the costs of this petition and hearing ; and that the petitioners, in case they prevail upon the review, take no costs. But being of opinion that it was doubtful whether the court had power under the statute (Rev. Sts. *c.* 99) to grant a review in a case of this kind, the presiding judge, without expressing any opinion upon that question, reserved it for the consideration of the whole court.

" If the whole court shall be of opinion that a review can be legally granted, under Rev. Sts. *c.* 99, upon the terms and conditions above stated, it is to be so granted accordingly. If otherwise, this petition is to be dismissed, with costs for the respondents."

The case was argued upon this report at November term 1854.

*R. Choate,* for the petitioners. The Rev. Sts. *c.* 99, § 19, upon which this petition is founded, give this court the fullest power, whenever they think it reasonable, to grant a review of a judgment rendered, either by the court of common pleas or by this court, " in any civil action, whether upon verdict, or report of referees, or upon a nonsuit or default, or in any other manner," or as it is expressed in . *St.* 1791, *c.* 17, § 2, (of which and of

*St.* 1788, *c.* 11, §§ 1, 2, this section is a codification and reënact‑ ment,) " without being limited to particular cases."

If a review cannot be granted in this case, the petitioners, who are found by the report to have been guilty of no laches, are without remedy. Indeed, they never had any remedy against the judgment sought to be reviewed, which is the judgment of this court. That judgment is without error, and no exception would lie to it; but it was entered by mistake, and should there‑ fore be set aside. The fact that the petitioners once had, as against the judgment of the court of common pleas, a remedy, by exceptions, which they have now lost by the entry of the judgment of affirmance in this court, cannot restrain the broad words of the statute of reviews, the very purpose of which is to give a remedy when all others fail.

But a review is not granted for a trial of the facts only. It is a retrial of the case, on the original or on new issues, and like the first trial, embraces the facts, and the law applicable to those facts. Under *St.* 1786, *c.* 66, §§ 1, 2, a review might be had, as of right, of any judgment rendered on a verdict, whether the verdict was returned upon the jury's own appre‑ ciation of evidence, or under the directions of the court. And there is no reason for a more limited construction of the stat‑ utes allowing reviews at the discretion of the court, the broad words of which, allowing reviews of judgments rendered " in any other manner," might well be held to include even judgments upon demurrer. The cases in Maine, cited on the respondents' brief, if good law, go no further than to hold that, when it conclusively appears by the record that the case turned on an issue of law only, and no verdict was taken, re‑ view will not lie. And they are opposed to the decisions of this court. *Champion* v. *Brooks*, 9 Mass. 230. *Petersham* v. *Dana*, 12 Mass. 430. At all events, proof, outside of the record, of the influence which the rulings of the judge had upon the verdict, cannot affect the rights of the parties or the power of the court.

The petitioner being entitled under the statute to a review, if the imposing of the condition, that the case shall be heard on the bill of exceptions, would render the grant of a review

legally impossible, it will not be imposed, and indeed cannot; for the terms and conditions, which the court is authorized by the statute to annex to the granting of a review, must be such only as qualify, but do not defeat, the review.

*H. Gray, Jr.* for the respondents. The proceedings in the court of common pleas amount to a demurrer to the plaintiffs' evidence and a judgment thereon against the defendants. The judgment in this court was a mere formal affirmance of the judgment of the court of common pleas, being the only mode in which the plaintiffs could have the benefit of that judgment. Rev. Sts. *c.* 82, §§ 13, 14. A review cannot be legally granted in this case, for the following reasons:

1. The petitioners had a remedy, (by exceptions duly prosecuted,) which without laches they could have availed themselves of; and which was more simple, more prompt, and less expensive and circuitous. *Monk* v. *Guild,* 3 Met. 373, 374. *Hart* v. *Huckins,* 5 Mass. 260.

2. The error sought to be corrected is one of law only; whereas the true and only object of a writ of review is to give a new trial on the facts. This appears from the origin of the remedy, and the course of legislation on the subject. The process was unknown at the common law, and was adopted from the courts of equity. By Sewall, J. in *Burrell* v. *Burrell,* 10 Mass. 222. The cases in which a bill of review will lie, in equity, as settled by Lord Bacon's ordinance of 1619, are for error in law appearing in the body of the decree; or for new matter which has arisen subsequently to the decree; or, by leave of court, upon newly discovered evidence. 1 Sand. Ord. Ch. 109. Story Eq. Pl. § 404. The earliest statute of reviews, passed in 1642, was that "if the party against whom the judgment shall pass shall have any new evidence, or other new matter to plead, he may desire a new trial in the same court upon a bill of review." Mass. Colony Laws, (ed. of 1672,) 152. Applying to this statute the rules of construction laid down in *Heydon's case,* 3 Co. 7 *b,* we find that the law, before the making of this act, provided ample remedies for mistakes of law, by writ of error and bill of exceptions; but provided no means of cor-

recting mistakes of fact, after verdict, even before judgment ; for new trials, for any cause other than the misbehavior of the jury, were not allowed in England until 1648. *Slade's case,* Style, 138. *Wood* v. *Gunston,* Style, 466. *Wheeler* v. *Honour,* 1 Sid. 58. *Witham* v. *Lewis,* 1 Wils. 55. *Bright* v. *Eynon,* 1 Bur. 394, 395 And the *St.* of 1642 specifies " new evidence, or other new matter to plead," as the only grounds for granting a review. To the same effect is the preamble to *St.* 13 W. 3, Anc. Chart. 368. The reason for the distinction may be that the law is presumed to be always known, but facts cannot be. See also *St.* 1672 ; the provincial statutes of 4 W. & M. (1692) ; 5 W. & M. (1693) 7 Geo. 1 (1720) ; 30 Geo. 2 (1757)—Anc. Chart. 93, 219, 273, 430, 611—and also *Sts.* 1786, *c.* 66, (repealed by *St.* 1817, *c.* 85 ;) 1788, *c.* 11, §§ 1, 2 ; 1791, *c.* 17, § 2 ; 1817, *c.* 63, § 1 ; Rev. Sts. *c.* 99, §§ 1, 7, 8, 13, 14, 19, 21, 25, 28. The word " trial," in these statutes, means a trial on the facts. 3 Bl. Com. 330. Steph. Pl. (1st Amer. ed.) 102 *& note* 30. *United States* v. *Curtis,* 4 Mason, 236. Rev. Sts. *c.* 2, § 6, *cl.* 1. This view of the nature and objects of a review is supported by the weight of authority in this commonwealth. 6 Dane Ab. 453. *Swett* v. *Sullivan,* 7 Mass. 346. *Stockbridge* v. *West Stockbridge,* 13 Mass. 304. *Dickenson* v. *Davis,* 4 Mass. 520. *Perry* v. *Goodwin,* 6 Mass. 498. And this point has been twice decided in favor of the respondents by the supreme court of Maine, under their statute of 1821, *c.* 57, which is copied from the *Sts.* of Mass. of 1788, *c.* 11, and 1791, *c.* 17, and is broader in its terms than Rev. Sts. *c.* 99, § 19. *Sturdivant* v. *Greeley,* 4 Greenl. 536–539. *Elden* v. *Cole,* 8 Greenl. 211. The remarks of Parsons, C. J. and Parker, C. J. in 9 Mass. 230, and 12 Mass. 430, were mere *obiter dicta ;* and no case is to be found, in which a review has been granted, by any court, to protect a party from the consequences of an erroneous opinion in matter of law merely.

3. The only question, reserved for the full court, is, not whether a review shall be granted generally in this case, but whether it can be granted " upon condition that the case shall be heard upon the bill of exceptions, as if it had been duly entered by the petitioners." This petition is therefore, in effect.

a petition for leave to enter exceptions. The power of granting reviews has always been kept distinct from the power to allow the entry of appeals or exceptions. *Sts.* 1788, *c.* 11; 1791, *c.* 17; 1820, *c.* 79, § 5. The whole matter of entering appeals and exceptions is now regulated by Rev. Sts. *c.* 81, §§ 34, 35; *c.* 82, §§ 6, 14; which do not reach this case, as it had already been duly entered in this court. The power to allow the entry of appeals and exceptions is a statute power, to be strictly complied with. *Bergen* v. *Jones,* 4 Met. 373, 375. *Dean* v. *Dean,* 2 Mass. 150. *Palmer* v. *Dayton,* 4 Cush. 271. *Parker* v. *Jackson,* 5 Cush. 501. *Eaton* v. *Framingham,* 6 Cush. 246. *Peters* v. *Peters,* 8 Cush. 543.

4. To grant a review, in this case, would be contrary to the general spirit of legislation in this commonwealth, which is to discountenance the taking, after verdict or judgment, of objections which might have been urged before. *Sts.* 1817, *c.* 85; 1840, *c.* 87, §§ 4, 5; 1851, *c.* 233, §§ 32, 114; 1852, *c.* 312, §§ 22, 77.

5. Even a court of full equity powers could not grant relief in this case, either between verdict and judgment, or after judgment. *Bateman* v. *Willoe,* 1 Sch. & Lef. 201, 206. *Simpson* v. *Hart,* 1 Johns. Ch. 97. *Walker* v. *Robbins,* 14 How. 584.

SHAW, C. J. The question in the present case is, upon a petition for a review, whether this court are authorized under the statute, to grant a review, on the case presented by the petition and the report of the judge before whom it was first heard.

The power to grant reviews, given to this court by Rev. Sts. *c.* 99, § 19, is expressed in very large and comprehensive terms. " When judgment is rendered, either by the supreme judicia. court or court of common pleas, in any civil action, whether upon verdict, or report of referees, or upon a nonsuit or default, or in any other manner, the supreme judicial court may grant a review thereof, if they shall think it reasonable, upon such terms and conditions as they shall think fit." Previous statutes had determined that reviews might be granted in various particular cases, as when judgment had been rendered on a nonsuit, default, discontinuance or the like, when occasioned by accident or

mistake; but this statute, revised from *St.* 1788, *c.* 11, §§ 1, 2, and 1791, *c.* 17, § 2, seems to have been designed to reach every case, whether it could be foreseen or not, with no other limitation than that the court should think it, under all the circumstances, reasonable. This power being thus granted, to be exercised upon such terms and conditions as they shall think fit, it seems to be adapted to meet cases, where injustice would otherwise be done.

The court of course would not think it reasonable, and therefore would not grant a review, where there is a regular and adequate remedy, as by writ of error or appeal, or where the complaining party has failed, by his own laches, to obtain the judgment of the court upon the true merits of his case, whether those merits depended mainly on contested facts or controverted principles of law. And it would seem that the power given to the court to grant a review or withhold it, according to their view of its reasonableness, upon such conditions as they think fit, would enable them to adapt the remedy to the exigency, by restoring the party to the benefits he has lost, and to limit the grant to that object, by requiring the petitioner, as a condition, to make such concessions as shall do justice to his adversary, and leave open to controversy, on the review, the questions only from which he has been precluded by the mistake or other casualty, against the effects of which he seeks to be relieved.

And we are not aware that there is any thing in our present statute, which, either in terms or by implication, limits a review to a revision of questions of controverted facts. In the old statute of reviews, *St.* 1786, *c.* 66, where reviews were provided for, as matter of right, and without the allowance of any court, the recital implies that it is a review of a judgment rendered on a verdict, in which, of course, an issue of fact must have been tried. There it was provided that there should be no further pleadings, but the action should be tried on the same issue originally tried. Upon this statute, and taking these two provisions as peremptory, it might well be argued, that the review must be tried on an issue of fact. But, even if this rule ever extended to reviews granted on petition, pursuant to *St.* 1788, *c.* 11, it was

long since altered and modified, by *St.* 1817, *c.* 63, § 1, author-
izing this court in any action of review, to order amendments to
the original writ or other record and proceedings, in any part
thereof. If an amendment is allowed in the declaration, of
course an amendment must be allowed in the plea, to meet the
altered allegations, and the issue may be changed from an issue
of fact to an issue in law. Suppose the plaintiff, in spreading
the real facts more fully in his declaration by his amendments,
should introduce the facts relied on by the defendant; the latter
might safely demur, and thus submit the case to the court upon
its merits, and the sole question, to be decided on the review,
would be a question of law. The Rev. Sts. *c.* 99, § 7, provide
that if an issue of fact was joined in the original suit, the case
on review shall be tried upon the same issue, except that the
court may allow amendments of the original declaration and
other pleadings, as might have been done in the original suit;
and if any other issue shall be joined, in consequence of such
amendment, the cause shall be tried on such new issue. As
such issue may be an issue in law, the statute carries a strong
implication, that the sole object of a review is not to try ques-
tions of fact only, upon the former evidence, with or without
new evidence; though undoubtedly that is one of its important
purposes.

There seems to be nothing in the reason of the thing, any
more than in the terms of the statute, which limits this right of
a review to the retrial of questions of fact, or which precludes
a party from the benefit of this remedy, when the judgment to
be reviewed has been passed upon the decision of the court
upon an issue in law. Suppose a controversy involves the ques-
tion whether a third party is or is not dead, connected with other
questions; the evidence is very strong that he is dead; a docu
ment is produced, purporting to be a deposition, by which a
witness testifies directly to the fact, that he was at a certain
foreign port when he died, knew him, attended his funeral, and
saw him in his coffin, in consequence of which a defendant,
having nothing to control this evidence and disprove the fact,
demurs to a declaration in which it is affirmed, and thereby

admits it, and the issue in law is decided against him. Before the time has passed, within which a review may be granted. it is satisfactorily proved that the deposition was a forgery, and the supposed deceased man returns alive; is there any inflexible rule to preclude the party from having this equitable remedy, because he was induced, without laches, to join an issue in law, instead of trying his case on an issue of fact?

So where a judge has been led by mistake to rule the law wrong; suppose a party had declared upon a statute on which his cause of action entirely depended; and at the time of the trial, it should appear by an act just passed by the legislature, then in session, that the statute had been repealed; and in the newspaper publication of the repealing act produced at the trial, a line should be erroneously omitted, containing a saving clause as to all actions then commenced; not only the parties, but the judge, relying on such erroneous publication, and believing the act repealed, the judge should rule that the action could not be maintained, and thereupon the plaintiff should become nonsuit, and judgment be rendered thereon. Upon the publication afterwards of the authenticated version of the laws, it should appear that the repealing act did contain such an execution in favor of suits then pending. In that case, the judge, who in theory is supposed and bound to know the law, would have decided wrong, upon a plain, unquestionable point of statute law, by which the plaintiff lost his rights. And yet the mistake not appearing on the face of the record, he could have no remedy by writ of error; and a review, upon petition, could alone restore him to those rights.

And although there is no decided case, in this commonwealth, precisely upon this point, probably because it has not been directly raised, yet we think there is much authority in support of the principles on which we proceed. They are rather cases, where the point has been taken to be well settled and assumed as correct, than where the point has been discussed.

In *M'Fadden* v. *Otis*, 6 Mass. 323, before the statute allowing a review as of right was repealed, the court, on motion, discharged a party from an agreement to waive his review, because

it was proved that it had been entered into inadvertently and without a due regard to its consequences.

In *Champion* v. *Brooks*, 9 Mass. 228, where a defendant had the judgment of the court of common pleas against him, and failed to appeal, when he had a right so to do, but brought error; the court, having decided that he could not have error, when he had a better remedy by appeal, still say: " We can in this case relieve the plaintiff in error, by granting him a review, if on his application it should appear that he had not had justice done him, and that his not claiming an appeal arose, not from his own laches, but from the misapprehension of the parties and of the lower court."

*Petersham* v. *Dana*, 12 Mass. 429, was a petition for review, where the case had been decided on an agreed statement of facts ; exceptions were taken, but in consequence of a mistake of the presiding judge of the court of common pleas in not affixing his seal to the bill of exceptions, (which was then neces- sary to bring the matter of law upon the record and so make it the foundation of a writ of error,) there being no right of appeal, the petitioners lost their remedy by writ of error. It was solely a question of law, on agreed facts, and no new facts were offered or suggested. Parker, C. J. in giving the opinion of the court, treats it as a case where the petitioners had been de- prived, without their fault, of an opportunity of having an ultimate legal decision of the question of their liability ; and adds : " There is no doubt that such review may be granted, within the general discretion given to this court by the statute providing for reviews upon petition." The verdict in that case was merely a verdict *pro forma*, given by direction of the court upon their opinion formed on an agreed statement of facts.

In *Stockbridge* v. *West Stockbridge*, 13 Mass. 302, where there had been an elaborate judgment upon an agreed state- ment of facts, the losing parties were allowed a review upon petition, showing that one material fact in the agreement was erroneous, and that owing to causes for which they were not responsible. The court said : " We have no doubt of our au- thority to grant a review in this case. Nor do we perceive any

reason against such an application as the present, which does not equally apply to a judgment rendered upon a verdict." They treat it as a case where a party has been entrapped or misled into an agreement, without laches, on his part. *Ward* v. *Clapp*, 6 Met. 414, is to the same point.

All the cases in which reviews have been granted to or against a trustee—and they are numerous—are cases which have not been tried by a jury. *Ex parte Packard*, 10 Mass. 426. *Brigham* v. *Elliot*, 12 Pick. 172. *Carrique* v. *Bristol Print Works*, 8 Met. 444.

The cases, cited in the argument for the respondents, in general do not controvert these views, except perhaps those from Maine. In *Hart* v. *Huckins*, 5 Mass. 260, and *Monk* v. *Guild*, 3 Met. 372, the parties respectively had a simpler and better remedy, the one by writ of error, the other by appeal. And in *Livermore* v. *How*, 6 Dane Ab. 459, the defendant was allowed to review, though he might have brought error. The ancient cases in Massachusetts, in general, were cases of reviews as matter of right. The cases from Maine we cannot adopt, against the construction we give to our own statutes, and what we understand to have been the practice under them.

The court are therefore of opinion that they have authority to grant a review in the present case, if they think it reasonable ; but in order to judge whether it is reasonable, it is necessary to examine the bill of exceptions ; and an argument must therefore be had upon the exceptions, not to be confined to their technical validity, but extending to the question whether they show substantial grounds of defence, affecting the merits of the case.

*Further argument ordered.*

The bill of exceptions set forth the following case : The original action was assumpsit on a policy of insurance dated June 1st 1847, whereby the defendants insured Joseph Morrill, for four years, "twelve hundred dollars upon the property described in application No. 635, which is made a part of this policy, reference thereto being had for description ; namely, upon his soap and candle shop and fixtures, eight hundred

dollars ; stock and tools, four hundred dollars ; " " subject to the provisions and conditions of the charter and by-laws of said corporation, and the lien on the interest of the person insured in any building covered by this policy, and the land under the same," which lien the company expressed in the policy their intention to rely on, to secure the payment of as sessments. Indorsed upon the policy was an assignment, dated July 16th 1847, executed by Morrill to the plaintiffs, in the following words : " Having mortgaged the property, real and personal, within mentioned, to Isaac Winslow & Sons, merchants of Boston, I hereby assign to them or their assigns the within policy, to hold as collateral security for the performance of the condition of said mortgage ; " and assented to in writing by the defendants.

The by-laws contained the following provisions : " ART. 9. If the insured shall neglect for the space of ten days, when personally called on, or after notice in writing left at his last and usual place of abode or business, to pay any assessment, the risk of the company on the policy shall be suspended till the same is paid."

" ART. 11. When any property insured shall be alienated by sale or otherwise, the policy shall thereupon be void, and be surrendered to the directors to be cancelled ; but if the grantee or alienee have the policy assigned to him, he may, upon application to the directors, within thirty days next after such alienation, on giving proper security, have the same ratified and continued in force for his benefit, with all the rights, and subject to all the liabilities, to which the original party insured was entitled and subjected : Provided, that such alienation shall not affect the rights of any person to whom the policy shall be payable, or be assigned as collateral security, if such person shall have signed a premium note with the assured, or shall give such security as the directors require."

" ART. 17. Any policy issued by this company shall be void, unless the true title of the assured be expressed in the proposal or application for insurance."

" ART. 19. The applicant for insurance shall make a true

representation of the property on which he requests insurance, so far as concerns the risk and value thereof, and of his title and interest therein ; and in case the application is made through an agent, the applicant shall be held liable for the representation of such agent."

The application contained several questions and answers, the sixteenth of which was as follows : " State whether or not incumbered, to whom, and to what amount." *Answer.* " Mortgaged for $2,000 on the buildings, land, &c.—value $7,000." And the application concluded with the following clause : " The said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant, and are material to the risk ; and in case of insurance he holds himself bound by the act of incorporation and by-laws of said company."

At the time of the application for insurance, the premises were subject to a mortgage to the plaintiffs for $2,000, and also to an earlier mortgage to the Traders' Bank for $800, which has remained in force ever since, and under which the bank took possession for the purpose of foreclosure, since the making of the policy.

Morrill testified that the application was filled out by an agent of the company, after he had explained to the agent all the circumstances of the case, and that he was pretty confident that he mentioned the first mortgage to the agent, although he had no distinct recollection of saying any thing to him about it. To so much of this testimony as was offered to show that the defendants, when they issued the policy, had any knowledge except what was contained in the application, the defendants objected.

There was evidence that, more than ten days before the loss sued for, an assessment was laid, and notice thereof given to Morrill, who did not pay it before the fire ; but it did not appear that the plaintiffs had ever been called upon to pay the assessment.

Upon this state of facts, and upon the evidence of Joseph

Morrill, *Wells*, C. J. ruled " that the jury would be warranted in finding a verdict for the plaintiffs ; that the action was rightly brought in the name of the present plaintiffs ; that the fact of the previous mortgage, under the circumstances stated in Morrill's testimony, (which circumstances the court ruled to be competent testimony,) if not thought by the jury material to the risk, (there being some evidence in the case that they were not material,) in the absence of fraud in fact, which the defendants did not claim to exist, were not sufficient to prevent the plaintiffs from recovering ; and that, in order, under the by-law, to cause a suspension of the policy, for non-payment of assessment, payment must have been demanded of the present plaintiffs."

Under these rulings, (and other rulings not considered in the opinion,) to all of which the defendants excepted, a verdict was taken for the plaintiffs, *pro forma*, for the full amount of the policy.

*O. P. Lord*, for the defendants.

*Gray*, for the plaintiffs. The equity of the case is with the plaintiffs. The points raised by the bill of exceptions are all purely technical, and not affecting the substantial rights of the parties, nor the merits of the case. It is not reasonable that a review should be granted, and therefore the court cannot grant one. Rev. Sts. *c.* 99, § 19. *Reynard* v. *Brecknell*, 4 Pick. 304. *Brewer* v. *Holmes*, 1 Met. 289, 290. *Ante*, 425. The petitioners should not stand in a better position than they would, if moving for a new trial before judgment ; and, in that case, when substantial justice has been done, a new trial will not be granted, to enable a party to avail himself of a technical defence. *Edmondson* v. *Machell*, 2 T. R. 4. *Wilkinson* v. *Payne*, 4 T. R. 470. *Blogg* v. *Bousquet*, 6 C. B. 75. *Wickes* v. *Clutterbuck*, 2 Bing. 493. *McLanahan* v. *Universal Ins. Co.* 1 Pet. 183. *McConnell* v. *Strong*, 11 Verm. 280. *Doty* v. *White*, 2 Root, 426.

The failure to disclose the mortgage to the Traders' Bank did not avoid the policy ; for the application covenanted for a disclosure of such facts, only so far as " material to the risk ; " the jury have found that it was not so material ; and of the materiality of a misrepresentation they are the proper judges. *Curry*

v. *Commonwealth Ins. Co.* 10 Pick. 541. *McLanahan* v. *Univer-sal Ins. Co.* 1 Pet. 188, 191, and cases cited. *Houghton* v. *Manuf. Mutual Fire Ins. Co.* 8 Met. 114, 121. *Daniels* v. *Hudson River Ins. Co.* Norfolk, 1853. The entry for foreclosure was not an alienation, while the equity remained in Morrill. *Clark* v. *New England Mutual Fire Ins. Co.* 6 Cush. 354.

The admission of Morrill's testimony is no ground for grant-ing a review. It does not appear that any part of it was admitted for an improper purpose. *Daniels* v. *Hudson River Ins. Co.*, above cited. Parol evidence of the omission, by the agent of the insur-ance company, of the first mortgage, disclosed to him by Morrill, would be admitted in equity, on a bill to reform the policy, or, by some courts, in an action at law. 1 Story on Eq. §§ 153, 158, and cases cited. *Bradford* v. *Union Bank of Tennessee,* 13 How. 66. *Peterson* v. *Grover,* 20 Maine, 363. *Flagler* v. *Pleiss,* 3 Rawle, 345. *Hamilton* v. *Asslin,* 14 S. & R. 448. *McEwen* v. *Montgomery County Mut. Ins. Co.* 5 Hill, 105. *Masters* v. *Mad-ison County Mut. Ins. Co.* 11 Barb. 632. And this court, on an application for a review, is not bound by the ordinary techni-cal rules of evidence. *Brewer* v. *Holmes,* 1 Met. 288. *Ferrill* v. *Simpson,* 8 Pick. 359.

The assignment of the policy to the plaintiffs, with the assent of the insurance company, created a new contract between the company as insurers, and the plaintiffs as insured, on which the latter might maintain an action in their own names. *Kingsley* v. *New England Mutual Fire Ins. Co.* 8 Cush. 393. After such new contract, the plaintiffs were " the insured," within the mean-ing of the ninth by-law, and their rights could not be affected by the subsequent neglect of Morrill to pay an assessment, payment of which had not been demanded of them. *Tillou* v. *Kingston Mutual Ins. Co.* 7 Barb. 570, and 1 Seld. 405. *Foster* v. *Equitable Mutual Fire Ins. Co.* 2 Gray, 216. The defendants, having assented to the assignment, and thus recognized the plain-tiffs as the insured, cannot now object that the plaintiffs never gave a new deposit note, even if such be the fact, which cannot be presumed, as their exceptions do not show it; or it may be assumed that the directors required no new security of the plain-tiffs under the eleventh by-law.

DEWEY, J.   This is an application for a writ of review to set aside a judgment obtained in this court upon a complaint for affirmation of a judgment of the court of common pleas, in a case where the defendants, after filing exceptions to the ruling of that court, had omitted by mistake to enter the same in this court.

The authority of this court to grant a review in such a case, under any circumstances, was denied by the respondent, and after argument upon that point, the opinion of the court, in favor of such power, was fully stated by the chief justice.   It is only necessary now to refer to it, so far as to say that, while it was held to be within the legitimate exercise of the powers of this court to grant such review, it was also held that it was only to be exercised to prevent substantial injustice being done, and not to be allowed for the purpose of granting further opportunity to raise technical objections, or grounds of defence not really affecting the merits of the case.

In this, as in all cases, the party asking a review on petition must satisfy the court that he had not been guilty of such laches in relation to the case, as for that reason to preclude the granting of his petition.   Upon that point a hearing was had before a single judge, whose report obviates all objections in that respect.   The remaining inquiry relates to the merits of the case on the part of the defendants, or the sufficiency of the evidence adduced to satisfy us that they had a good and substantial ground of defence to the original action, and which, through some excusable omission, they had lost the opportunity of making available, by reason whereof judgment was rendered against them in the original suit.

It becomes necessary therefore to understand the subject of the former trial, the evidence offered by the parties, and the points in issue between them.   For that purpose, we must recur to the proceedings had in the case, and the matter litigated at the trial, and as the most convenient mode of learning this, we have allowed the exceptions, signed by the presiding judge, to be put into the case, not to be examined by the same inflexible rules of law as they would be if duly entered and pending

before us for a hearing and adjudication, nor to be used to set aside the former judgment upon any mere technical ground, but to see if there were substantial merits in the grounds of defence.

The case is found to have been an action upon a policy of insurance to recover for a loss by fire. To the right of the plaintiffs to maintain the action, various objections were 'aken, So far as they were technical, we pass over them and shall only refer to those relied upon as a substantial defence.

1. The first of these is, that the policy was ineffectual, by reason of the false answers of the assured in the application for insurance. The sixteenth question propounded to him is in these words: " State whether or not incumbered, to whom, and to what amount?" The answer is: " Mortgaged for $2,000, on the buildings, land &c.—value $7,000."

It was proved, that in addition to the mortgage for $2,000 to the plaintiffs, to whom the policy was assigned, there was, at the time of making the application, another and older mortgage upon the property of $800 to the Traders' Bank, which mortgage was in full force and unsatisfied, and under which an entry to foreclose had been made before the loss by fire.

It has been repeatedly held by this court, that such misrepresentation constitutes a good defence to a suit on the policy in the case of a mutual fire insurance company. It has been held to be so, because it is a misrepresentation as to the lien the insurance company would have upon the property for the security of the deposit note. We have gone further and held, that, irrespective of this, the insurance company have the right to be truly informed as to the extent of the interest of the assured in the premises insured. *Davenport* v. *New England Mutual Fire Ins. Co.* 6 Cush. 340. *Hayward* v. *New England Mutual Fire Ins. Co.* 10 Cush. 443. *Brown* v. *People's Mutual Ins. Co.* 11 Cush. 280. *Packard* v. *Agawam Mutual Fire Ins. Co.* 2 Gray, 334.

It is however urged, in behalf of the plaintiffs in the original action, that although this has been so held in various cases, yet this application differs from those cases in this, that the appli-

cant only " covenants and agrees that the foregoing is a just, full and true exposition of all the facts," " so far as the same are known to the applicant, and are material to the risk." The plaintiffs then contend that the omission of the $800 mortgage to the Traders' Bank was in no way material, and that this fact has been found by the jury.

But this is not a full statement of the obligations of the applicant. In the application itself he says " he holds himself bound by the by-laws of said company." Again; the policy is in terms subject to the by-laws of the corporation. Article 19 of those by-laws, is thus: " The applicant for insurance shall make a true representation of the property on which he requests insurance and so far as concerns the risk and value thereof, and of his title and interest therein ; and in case the application is made through an agent, the applicant shall be held liable for the representation of such agent." We think, under the provisions found in the by-laws, the applicant was bound to make a true statement of his interest in the property, and not having done so, but withholding the fact of a prior mortgage of $800 thereon, such misstatement would constitute a substantial defence to the action, and prevent a recovery in an action on the policy.

2. Another ground of defence, urged against the right of the plaintiffs to maintain an action on the policy, is an alleged violation of the ninth by-law, which is in these words: " If the insured shall neglect for the space of ten days, when personally called upon, or after notice in writing left at his last and usual place of abode or business, to pay any assessment, the risk of the company on the policy shall be suspended till the same is paid." If the facts as alleged by the defendants are shown to be true, and there has been a failure to comply with the by-law, this would also be a good substantial defence. Some question was made whether the notice of the assessment should not have been given to the plaintiffs, the assignees of the policy. Upon the facts disclosed in the exceptions, it would seem that the notice was properly given to Morrill, the original assured. *Foster* v. *Equitable Mutual Fire Ins. Co.* 2 Gray, 218, 219.

It was an assessment upon his note, and nothing appears to show that the assignees had given any new deposit note or assumed any liability to pay the assessments. Had they given a new note as a substitute for Morrill's, upon taking the assignment of the policy, and thus become members of the company, and liable as such, with their assent, they should have had notice of the assessment. But if the notice was properly given to Morrill, as seems to have been the case, and there was a neglect for more than ten days to pay the assessment, that would be a substantial ground of defence to the action.

A writ of review may therefore issue, on payment of the respondents' costs of this petition, and upon the further condition that the petitioners, in case they prevail on the review, take no costs; these being the terms imposed by the judge before whom the petition was originally heard. *Review granted.*

*Gray* suggested that the expenses of printing the respondents' points and authorities should be allowed in their bill of costs, for the following reasons : They are made a necessary expense by the rule of this court of June 29th 1850, (5 Cush. viii.) and should therefore stand on the same ground as copies of papers for the court, which are uniformly taxed against the losing party. See *Gardner* v. *Gardner*, 2 Gray, 437. So the law allows the taxation, in the bill of costs, of office copies of deeds, exemplifications of records, searches in registers to establish pedigrees, plans, or models of patented machines, when used at the trial. *Suffolk* v. *Mill Pond Wharf Corporation*, 5 Pick. 540. *Jackson* v. *Root*, 18 Johns. 336. *Johnson* v. *Lawson*, 2 Bing. 342. *Holmes* v. *Holmes*, 9 Moore, 158, and 2 Bing. 75. *Hathaway* v. *Roach*, 2 Woodb. & M. 73. In New Jersey and Pennsylvania, a more strict usage prevails, inconsistent with the practice of this state as to copies, and with the decision in 5 Pick. 540. See *Den* v. *Johnson*, 1 Green, 156 ; *Anon.* Spencer, 112 ; *Murphy* v. *Loyd*, 3 Whart. 356. In New York, it has been repeatedly decided that the actual expense of printing the points furnished at the argument is to be taxed for the prevailing party. *Belding* v. *Burlingham*, 1 Hill, 361. *The People* v. *Tilton*,

18 Wend. 514. *Waller* v. *Harris,* 7 Paige, 479. In *Moore* v. *Denson,* 1 Speers, 30, briefs were not allowed to be taxed, simply because not " actual expenses, necessarily incurred."

But THE COURT held, that no allowance could be made, in the bill of costs, for the expense of printing or copying the points and authorities, on the ground that they were part of the argument, the expense of which, like the fees of counsel, must rest on the party in whose behalf it was offered.