### PINCOLINI et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1924.)

No. 4000.

1. **Witnesses ☞386—Cross-examination of defendant charged with unlawful sale held proper, as relating to statement tending to contradict him.**

Where a defendant, charged with unlawful sale of liquor and maintaining a nuisance, as a witness in his own behalf testified that he had not sold liquor on his premises, it was competent to ask him on cross-examination if he had not stated to persons named that he did not consider it a crime to sell liquor, and that he would continue to do so as long as he was out of jail.

2. **Criminal law ☞761(1), 777½—Charge of court respecting the evidence should not be argumentative, nor assume facts and should state evidence for and against defendant.**

While the judge of a federal court may review the evidence in his charge, he should not do so argumentatively, nor assume facts in controversy and should fairly state the evidence in favor of as well as against the defendant.

3. **Criminal law ☞1122(3)—Charge relating to facts not reviewable, where evidence is not in record.**

That facts assumed and conclusions drawn from the evidence by the judge in his charge were not warranted cannot be determined by the appellate court when the evidence is not in the record.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Nevada; Edward S. Farrington, Judge.

Criminal prosecution by the United States against D. Pincolini and J. Pincolini. Judgment of conviction, and defendants bring error. Affirmed.

McCarran & Mashburn, of Reno, Nev., for plaintiffs in error.

George Springmeyer, U. S. Atty., and Chas. A. Cantwell, Asst. U. S. Atty., both of Reno, Nev.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. The indictment in this case was returned against four defendants and contains four counts. The first count charges a conspiracy to violate the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), the second count charges the unlawful possession of intoxicating liquor, the third count charges the unlawful sale of intoxicating liquor, and the fourth count charges the maintaining of a common nuisance. Two of the defendants were acquitted as to all four counts, and two were convicted upon the last three counts.

Upon the trial a witness for the defense admitted that he had intoxicating liquor in his possession at the time of the raid which resulted in the arrest of the plaintiffs in error, and that he then broke the bottles containing the liquor. The witness was asked upon cross-examination:

"Do you realize right now that, if we had the marshal put you under arrest on the charge of having possessed liquor on that day, there would be nothing for you to do but enter a plea of guilty?"

An objection was interposed to this question upon the ground that the witness was not presumed to know the law or what might happen to him. This objection might well have been sustained. The witness had already admitted the possession of intoxicating liquor, and that he knew that such possession was prohibited by law, and what he could or might do if placed under arrest was utterly beside the question at issue. We cannot see, however, that the ruling was at all prejudicial.

[1] One of the plaintiffs in error was recalled for further cross-examination, and was asked if he did not state to certain named officers at a given time and place, that he did not consider it a crime to sell liquor, and that he would keep on selling as long as he was out of jail. Objection to the question was interposed upon the ground that the testimony was incompetent, irrelevant, and immaterial, and not proper cross-examination. On direct examination the witness was asked whether, at any time, he had sold, assisted in selling, or consented to the sale of intoxicating liquor on the premises in question, and answered in the negative. The testimony sought to be elicited by this question had a tendency to contradict the testimony given by the witness on direct examination and was therefore clearly competent.

The remaining assignments are based upon exceptions to the charge of the court. The only exception taken to the charge was in the following language:

"If it please the court, we except to the portion of the court's charge wherein the court summarizes and states the testimony, upon the ground that the same invades the province of the jury, and the same is beyond the power of the court in charging the jury as to mere matters of law."

In response to this exception the court said:

"I have discussed this testimony, because it is within the province of the judge to do so if he believes it to be his duty. It may not be so in the state courts, but it is the province and the right of a federal judge to discuss the testimony if he sees fit, and even to go so far as to give his opinion with reference to the case, provided he instructs the jury, as I have done, that

they must follow their own judgment, and that anything the court says with reference to the facts and the evidence in the case, and the credibility of witnesses, is a matter that can have no weight with them, except as it appeals to their judgment."

It is manifest from the foregoing that counsel reserving the exception had in mind the constitutional provision in Nevada, declaring that judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law, and that the exception was so understood by the trial court. It is now conceded that the state constitutional provision has no application to a trial in the federal court, and therefore the exception presents no question for review in this court. The obvious purpose of an exception to an instruction is to direct or challenge the attention of the trial court to the claimed error, so that it may be corrected before the jury retires, thus obviating the necessity for granting a new trial or for reversal on writ of error, and this court has repeatedly held that exceptions reserved after the retirement of the jury are of no avail, and that instructions cannot be reviewed, in the absence of proper and timely exceptions. We might, of course, review a plain error not assigned or specified to prevent a palpable miscarriage of justice, but no such case is presented here.

[2] The instruction complained of may not be above criticism. In charging the jury the court should not assume facts in controversy; if the testimony is stated, it should be stated with accuracy; that which makes in favor of the party should be stated, as well as that which makes against him; theories should not be advanced or conclusions drawn that are not warranted by the testimony; the charge should not be argumentative or one-sided; and the court should not step out of the province of the judge into that of the advocate. Starr v. United States, 153 U. S. 614, 14 Sup. Ct. 919, 38 L. Ed. 841, and cases there cited. It may well be claimed that the instruction complained of does not meet all of these requirements.

[3] But the chief objection is that the charge assumes facts and draws conclusions not warranted by the testimony. That facts are assumed and conclusions drawn does not admit of question, but it cannot be said that the assumptions and conclusions are not warranted by the testimony when the testimony is not before us. The bill of exceptions only contains fragmentary portions of the testimony, upon which objections were based. Thus no part of the testimony in chief on the part of the government is included, except a single question upon which an objection was based, and no part of the testimony on the part of the defense is included, except two questions to which objections were interposed. It cannot be said, therefore, that the assumptions and deductions complained of were not warranted by the testimony before the court below.

For these reasons, we find no reversible error in the record, and the judgment is affirmed.

ROSS, Circuit Judge (dissenting). The bill of exceptions recites, among other things, that the court—

"in charging the jury as to the common nuisance count in the indictment discussed it in connection with the charge of conspiracy alleged therein, and,

among other things, instructed the jury in the following language: 'In determining whether there was a conspiracy, you are to consider all the conduct of the parties; you will consider the locked door, if you think any of the doors were locked; you will consider the conduct of Joe Pincolini with reference to this matter; you will consider the conduct of Dante and Adowaldo, and of the lady, Mrs. Pincolini; and I think you would also consider the character of the establishment, the soft drink place in front, the door and the kitchen in the rear. That is a large room, the only furniture apparently being a sink, with a drain board and running water, a cupboard, and two shelves. You should also consider the bottles; the bottle that was found in the sink and the contents of that bottle. There is testimony that one of the milk bottles contained something smelling like alcohol. There were also a number of other bottles. One of the legs of the sink has been presented in evidence. I think it is something that should be considered by the jury in determining what that room was used for. You will notice neither end of the leg of the sink shows any nail marks; that leg has been there for a long time; it is hollow, and can be taken out and put back again without destroying any nails, or any permanent fastening. The other leg is of the same character, and each leg is capable of being used to hide a bottle, perhaps several. You will also consider the sink and the running water, and the bottles there. Then I think it would be very proper for you to consider the testimony as to persons going from that back room to the door at the north, thence upstairs, if they went upstairs, and coming back with the glasses, and with liquor, if you believe that testimony. There is no question about there being liquor in room 16. It is also a matter of significance that the liquor in that room was destroyed just at the time this raid was made, and that one of the defendants was there. If you consider the testimony of the witness Boyd, who admitted that a friend of his had taken liquor up to room 16, isn't it rather a significant circumstance that this man only went up there on the 29th day of July, it was the first time that he had ever had that room, that he only stayed there until this raid was made, then disappears from the house, and is not there again as a tenant until this case comes on for trial; three days he has been there, and there is one day coming. These are all matters for you to consider in determining, not only whether there was a conspiracy on the part of these defendants, but also to determine whether that was a place kept for the purpose of selling intoxicating liquor. * * * Mr. Scott has testified as to two purchases made in April. Mr. Hogue has testified to a sale that was made on the 2d day of August. If their testimony is true, it shows that defendants were engaged in that place in selling liquor, at least on these dates. * * * There has been an abundance of evidence on the third count in the indictment, of making sales, and there has been a denial of those sales. As you have been informed repeatedly, it is your duty to accept the law as it is given you by the court; you cannot question the law as it is given to you; you must follow the instructions of the court. As to questions of fact, it is your duty to determine what the evidence proves, and you are to follow your own judgment, not the judgment of the court, or the judgment of counsel, or what counsel may have said, or what the court may have said; you are bound to submit these matters of fact to your own conscience and to your own judgment, under the instructions, and a true verdict render'—to all of which the defendants objected in the following language: 'Mr. Frame: If it please the court, we except to the portion of the court's charge wherein the court summarizes and states the testimony, upon the ground that the same invades the province of the jury, and that the same is beyond the power of the court in charging the jury as to mere matters of law.' That after said exception last quoted was by counsel for defendants stated and taken, the court further charged the jury as follows: 'I have discussed this testimony, because it is within the province of the judge to do so if he believes it to be his duty. It may not be so in the state courts, but it is the province and the right of a federal judge to discuss the testimony if he sees fit, and even to go so far as to give his opinion with reference to the case, provided he instructs the jury, as I have done, that they must follow their own judgment, and that anything the court says with reference to the

facts and the evidence in the case and the credibility of the witnesses, is a matter which can have no weight with them, except as it appeals to their judgment.' No further exception was taken by defendants thereafter, nor was the exception taken before this renewed or restated, and the case was thereupon given to the jury."

In the case of Starr v. United States, 153 U. S. 614, 14 Sup. Ct. 919, 38 L. Ed. 841, the Supreme Court, in holding that the trial judge did not sufficiently separate the law from the facts of the case, and leave the facts in unequivocal terms to the judgment of the jury, for which reason a new trial was awarded, said:

"It is true that in the federal courts the rule that obtains is similar to that in the English courts, and the presiding judge may, if in his discretion he think proper, sum up the facts to the jury; and if no rule of law is incorrectly stated, and the matters of facts are ultimately submitted to the determination of the jury, it has been held that an expression of opinion upon the facts is not reviewable on error. Rucker v. Wheeler, 127 U. S. 85, 93; Lovejoy v. United States, 128 U. S. 171, 173. But he should take care to separate the law from the facts, and to leave the matter in unequivocal terms to the judgment of the jury as their true and peculiar province. McLanahan v. Universal Insurance Co., 1 Pet. 170, 182. As the jurors are the triers of facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand that the instruction is not given as to a point of law by which they are to be governed, but as a mere opinion as to the facts, to which they should give no more weight than it was entitled to. Tracy v. Swartwout, 10 Pet. 80, 96; Games v. Stiles, 14 Pet. 322. The same rule prevails in the courts of many of the states, and in the charge in Commonwealth v. Selfridge, referred to by the court below, these views were expressed upon the subject: 'As to the evidence, I have no intention to guide or interfere with its just and natural operation upon your minds. I hold it the privilege of the jury to ascertain the facts, and that of the court to declare the law, to be distinct and independent. Should I interfere, with my opinion, with the testimony, in order to influence your minds to incline either way, I should certainly step out of the province of the judge into that of an advocate. All that I can see necessary and proper for me to do in this part of the cause is to call your attention to the points or facts on which the cause may turn, state the prominent testimony in the case which may tend to establish or disprove these points, give you some rules by which you are to weigh the testimony, if a contrariety should have occurred, and leave you to form a decision according to your best judgment, without giving you to understand, if it can be avoided, what my own opinion of the subject is. Where the inquiry is merely into matters of fact or where the facts and law can be clearly discriminated I should always wish the jury to leave the stand without being able to ascertain what the opinion of the court as to those facts may be, that their minds may be left entirely unprejudiced to weigh the testimony and settle the merits of the case.' So the Supreme Court of Pennsylvania says: 'When there is sufficient evidence upon a given point to go to the jury it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided. The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him; deductions and theories not warranted by the evidence should be studiously avoided. They can hardly fail to mislead the jury and work injustice.' Burke v. Maxwell, 81 Penn. St. 139, 153. See, also, 2 Thompson on Trials, §§ 2293, 2294, and cases cited. It is obvious that, under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling. Hicks v. United States,

150 U. S. 442, 452. The circumstances of this case apparently aroused the indignation of the learned judge in an uncommon degree, and that indignation was expressed in terms which were not consistent with due regard to the right and duty of the jury to exercise an independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances."

And after making reference to further remarks of the trial court, it ended its opinion thus: '

"Whatever special necessity for enforcing the law in all its rigor there may be in a particular quarter of the country, the rules by which and the manner in which the administration of justice should be conducted are the same everywhere, and argumentative matter of this sort should not be thrown into the scales by the judicial officer who holds them."

A late apparent tendency on the part of some courts to encroach upon the province of the jury, which, I take it, was in every case unintentional, makes it proper, I think, to set forth at length the above declaration of the Supreme Court. Turning to the instructions in the instant case, it is seen that, while the learned trial judge did expressly tell the jury that "anything the court°says with reference to the facts and the evidence in the case and the credibility of the witnesses is a matter which can have no weight with them except as it appeals to their judgment," which they must follow, the court had before, as the bill of exceptions distinctly shows, stated not merely what the judge thought the evidence showed, but stated certain things as absolute facts, and one at least by way of argument, which obviously might have influenced the verdict of the jury. I italicize those statements of the trial court which I think were of that character. After stating that there was testimony that one of the milk bottles contained something smelling like alcohol, the court said:

"*There were also a number of other bottles.* One of the legs of the sink has been presented in evidence. I think it is something that should be considered by the jury in determining what that room was used for. You will notice neither end of the leg of the sink shows any nail marks; *that leg has been there for a long time; it is hollow, and can be taken out and put back again* without destroying any nails or any permanent fastening. The other leg is of the same character, *and each leg is capable of being used to hide a bottle, perhaps several.* You will also consider the sink and the running water, and the bottles there. Then I think it would be very proper for you to consider the testimony as to persons going from that back room to the door at the north, thence upstairs, if they went upstairs, and coming back with the glasses, and with liquor if you believe that testimony. There is no question about there being liquor in room 16. *It is also a matter of significance that the liquor in that room was destroyed just at the time this raid was made and that one of the defendants was there.* If you consider the testimony of the witness Boyd, who admitted that a friend of his had taken liquor up to room 16, *isn't it rather a significant circumstance that this man only went up there on the 29th day of July;* it was the first time that he had ever had that room; that he only stayed there until this raid was over, *then disappears from the house, and is not there again as a tenant until this case comes on for trial; three days he has been there, and there is one day coming.* These are all matters for you to consider in determining, not only whether there was a conspiracy on the part of these defendants, but also to determine whether that was a place kept for the purpose of selling intoxicating liquor."

In view of the nature of the error committed, even if there had been no exception taken, I should feel obliged to take notice of such error and act accordingly, under the undoubted power of the court to take notice of a plain error, even though no objection or exception be taken by counsel; but here counsel did—

"except to the portion of the court's charge wherein the court summarizes and states the testimony, upon the ground that the same invades the province of the jury, and that the same is beyond the power of the court in charging the jury as to mere matters of law."

While it is true that the exception taken was somewhat indefinite, and while the court has the right, of course, to "summarize" the testimony in his charge, the charge in question shows upon its face that, in making such summarization, the court did, as I view it, invade the province of the jury, by himself stating what the testimony proved by specifically designating certain specific facts as having been proved, and the exception of counsel, it seems to me, covered that.

In my opinion the judgment should be reversed, and the case remanded for a new trial as to the plaintiffs in error.