## FULKERSON v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. November 24, 1924.)

### No. 4312.

**Criminal law ⬤⇒762(2)—Comments by court held not reversible error.**

A statement by the judge in his charge that he did not believe the testimony of defendant as to a fact, with further comment on the effect of the failure of courts and juries to properly function in enforcement of the laws, *held* not reversible error, where he distinctly told the jury that they were not to be controlled by his opinion, but must determine the facts for themselves.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Criminal prosecution by the United States against Glen Fulkerson. Judgment of conviction, and defendant brings error. Affirmed.

Edward H. Chavelle, of Seattle, Wash., for plaintiff in error.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Fulkerson, defendant below, was convicted of unlawful possession of intoxicating liquor, sale of some of such liquor, and maintenance of a common nuisance. To review the judgment he brought writ of error.

The substance of testimony in behalf of the government was that prohibition agents went to a certain apartment in an apartment house in Seattle, and were invited into a room by a woman named Miller; that one of the agents asked for whisky, and the other for gin; that the woman returned with a flask of whisky in the pocket of her dress, and delivered some gin to one of the agents; that she told them that the price of the bottle was $5; that, upon an offer of $5 for the two drinks and what was left in the bottle, she said she would see, and went outside; that in a few minutes defendant

*Rehearing denied January 26, 1925.

Fulkerson came in and said, "It is all right for the five," and passed the bottle to one of the men, and Fulkerson took the $5 in payment; that Fulkerson was then placed under arrest, and upon service of a search warrant a quantity of liquor was found in the kitchen and other parts of the apartment.

The defendant testified that he was a policeman in Seattle; that he rented a room in the apartment house and went there on the day in question to get some of his effects; that while in the hall a woman, whom he did not know, came from another room and said, "Here is this bottle of yours; it ought to be good for your rheumatism"; that she asked where he came from, and he replied from the lavatory; that she said, "You just hand it to them," and opened the door of a room where he (the defendant) found two men, and handed the bottle to one of them; that the men gave him (the defendant) some money, and that, upon asking what it was for, the man replied, "For the bottle"; that the woman had gone away, and that the man then put' him under arrest; that when the bottle was handed to him it was not wrapped, and that when the $5 bill was handed to him the man said, "Here, give this to the girl."

After careful instructions, explaining the presumption of innocence and that it was the duty of the jury to give the defendant the benefit of a reasonable doubt, the court defined direct and circumstantial evidence, and distinctly charged that the jury was the sole judge of all the facts in the case and of the credibility of the witnesses, and then said:

"Now, then, what is the testimony on the part of the government? The witnesses on the part of the government say that when they went in this Miller woman brought them in some drink, and then they asked for a flask, and she went out and said, "Wait a minute," went out with the partially filled flask, and then came back with the defendant. The defendant said, "That is all right, $5 for the bottle and for the two drinks," and gave the bottle to Mr. O'Hara and took the $5. Now, the defendant says that he was in the hall; that he did have his coat off, as the officers of the government say he did; that he did come into the room with the bottle of whisky in his hand; that he did deliver to one of these men the bottle and did receive $5. Now, that far the testimony harmonizes. Now, he said that the woman gave it to him; he did not know what it was; told him to give it to the man, and he did it; then the officers came

in and they found the $5 in his hand, just as the officers testified they did. Now, he was asked whether the bottle was wrapped up; he said, 'No.' He said he did not know what was in the bottle. It is for you to determine the fact. Now, if he was in the hall, and if this woman gave him the bottle, and told him to deliver it to these men, and he did not know what was in the bottle, and gave it to the men, without knowing what was in the bottle, and got the $5 without knowing what was in the bottle, or what he was doing, if you believe that, then he is not guilty, because he didn't know what was in the bottle. If you believe that a man could be on the police force in Seattle for three years, and have a flask like that passed to him, with that color of contents, a man on the police force, and not knowing it was whisky or prohibited spirits provided by the Volstead Law and the prohibition amendment, then you must conclude that way, because it is for you to determine what the fact is. Now, I don't want you to conclude from any opinion you may think I have of the facts. I don't believe a word of it myself; I believe he knew what was in the bottle, but that must not control you; you must find the fact. And while I have a right to tell you what I think about the facts, you must not be controlled by what I think about them; you must weigh all the testimony and all the circumstances, and determine what the truth is. If you have a reasonable doubt as to the facts, then you should return a verdict of not guilty. But, if you are convinced beyond a reasonable doubt that he did know what was in the bottle, then it is your duty to return a verdict of guilty on the first count, and of guilty on the second count, because the possession of that one bottle would be sufficient to violate the law, as charged in the information, of possession and sale. * * *

"Now, in these instructions, gentlemen of the jury, I have related and referred to the facts or testimony and the circumstances, with a view of illustrating or demonstrating some proposition of law which has its application to the facts, and have expressed some personal opinion; but I do not want you to be controlled by it in any sense, but I want you to conclude upon the evidence itself, so that the law may be administered fairly, if the law has been violated that it may be enforced, and the parties who violate it be punished. When the courts cease to function properly then God have mercy upon the people of the United States. Law is a rule of civil conduct prescribed by a superior power, and persons must regulate their conduct with relation to that law. It is a rule by which people shall live, and when they violate that rule why then they must be punished; that is the only way we can have government; and when courts and juries won't function it will only be a short step to a condition of anarchy. If you believe that the defendant went on the stand and perjured himself, with a view of escaping a penalty, you will so conclude. Pass upon this fairly. It is your duty as 12 fair-minded men to give the defendant a square deal; he is entitled to it. The government is entitled to a square deal; give it a fair and square deal in this case and if you have a reasonable doubt upon all the circumstances developed here, you will resolve it in favor of the defendant; if you are convinced beyond a reasonable doubt, then return a verdict of guilty in this case, as your conscience dictates, and the right and truth is."

The argument is that the court, by its comments upon the testimony and upon the general consequences of a failure of courts and juries to "function," emphasized the evidence which was adverse to the defendant, and invaded the province of the jury, and prevented it from properly performing its function. But in the federal courts the expression of the opinion of the judge upon the facts is not ground for reversal, provided, always, the court clearly and unmistakably instructs that all matters of fact, including those upon which the court may have expressed its opinion, are ultimately for the jury to pass upon. In Lovejoy v. United States, 128 U. S. 171, 9 S. Ct. 57, 32 L. Ed. 389, the Supreme Court held that a court of the United States, in submitting a case to the jury, might at its discretion "express its opinion upon the facts, and that such an opinion is not reviewable on error, so long as no rule of law is incorrectly stated and all matters of fact are ultimately submitted to the determination of the jury." Tuckerman v. United States (C. C. A.) 291 F. 958. Applying the rule stated to the charge given, it was not error for the court to express its opinion upon the facts, for in positive language and more than once it was made perfectly clear that the jury were the "sole judges of all the facts in the case"; that they must not be "controlled in any sense" by what the judge thought about the facts; that they must give defendant and the government a "square deal" and conclude upon the evidence itself what was the truth.

There is left for consideration the language by which the judge depicted that, if

courts and juries fail to perform their duties, anarchy is but a step away. How could that statement have prejudiced the defendant? Of course, courts and juries must act within their respective spheres, by upholding the law where the evidence proves guilt, as well as where it fails to meet the measure of proof legally required. Considering the whole charge, there was nothing which told the jury that the way to function in the case before them was to convict, regardless of legal evidence establishing guilt beyond a reasonable doubt.

The judgment is affirmed.

ROSS, Circuit Judge. I respectfully dissent. The plaintiff in error was convicted of the crimes of having unlawful possession of certain described intoxicating liquor, of unlawfully selling some of such liquor, and of having unlawfully conducted and maintained a common nuisance by keeping and selling such liquors, all in connection with two women named, respectively, Luella Nulph and Ruth Miller, and all within the jurisdiction of the trial court, contrary to the provisions of the National Prohibition Act.

The bill of exceptions shows that testimony was given on the part of the government tending to prove the alleged offenses by the plaintiff in error in connection with the two women referred to, in apartment F in the Metropolitan Apartments in the city of Seattle. I state, in substance, a little of the testimony of the witness Justi, who testified that he is a prohibition agent; that he visited apartment F of the Metropolitan Apartments with Agent O'Hara; that the door was opened by Ruth Miller, who invited them into the room; that he then inquired if she had any drinks of liquor, and she said "Yes," and he told her he would like some Scotch whisky, and O'Hara said he would like some gin; that she returned to the room with a serving glass full of gin in her hand, and a flask of whisky in the pocket of her dress. She delivered the gin to O'Hara, and then served Justi from the flask of whisky. O'Hara asked her how much it would be for the bottle. She said, "Well, they are $5 apiece." O'Hara said, "Well, I will give you $5 for these two drinks and what is left in the bottle." She said, "I will see," and went outside. After a few minutes the door opened, and Mr. Fulkerson came in and said, "It is all right for the five," and passed the bottle to O'Hara and received $5 in payment. Witness then notified Fulkerson that he was under arrest; that Agent Kline took the $5

bill, which had been previously marked, and the search warrant was served, and they went through the rest of the apartment; that in the kitchen they found a quantity of moonshine whisky, home brew beer, and some gin, in the stairway of the bathroom they found two quarts of whisky, in the upper drawer of the dresser there were a number of men's shirts and socks and underwear, collars, handkerchiefs, and neckties, and also some memorandum, papers, and receipts showing that the telephone there was paid in Fulkerson's name.

Upon the conclusion of that and other testimony on the part of the prosecution the government rested, whereupon Fulkerson testified in his own behalf, saying, among other things, that he lived with his family, consisting of a wife and four children, at 322 Mercer street, and was a member of the police force, and had been for about 3½ years; that he had heard the testimony of the two prohibition agents; that his beat was Seventh and University; that in addition to his occupation as policeman he was working as a door man at the Hippodrome, at which place he worked from 8:30 until 1 or 1:30 at night; that he walked his beat from 12 until 8 o'clock in the evening, and rented a room in the apartment that has been mentioned from his codefendant, Mrs. Nulph, paying her therefor $15 a month; that he did not know Mrs. Miller, his other codefendant; that he had nothing to do with the liquor in the case; that what happened on the occasion in question was that he had received a check for one-half month's pay from the police department, which, being short, the captain told him to go and see the commissioner and have it fixed; that he did so, and then on the 10th of September went to his room to get his things; that on the first of that month he started working at night, at which time his beat was changed to Washington street; that he had had the room up to the 1st of the month, but had never taken his things away; that August 30th was the last time he had been there previous to his arrest; that on September 10th he went to the room only to get his clothes and what things he had left there; that his wife, brother, and sister were out in front of the building in a car, waiting for him to get his things, which things included a uniform, which he wore during the summer months on the afternoon shift, and other clothing; that all the tenants in the flat had a key for the outside door, there being two or three tenants in each flat; that while he was in the hall a woman whom he afterwards ascertained to be Mrs.

Miller came from another room and said, "Here is this bottle of yours; it ought to be pretty good for your rheumatism," to which he responded, "I don't know anything about it;" and that she looked at him and said, "Where did you come from?" to which the witness responded, "I came from the lavatory;" and that she said, "You just hand it to them," and she opened the door of the front room and the witness stepped in, where he found two men and handed one of them the bottle, who gave the witness some money, and that the witness asked the man what it was for, and he replied, "For the bottle;" that the witness turned around to look for the girl, but that she was gone; and that the men then said that they were federal officers and put the witness under arrest. The witness also denied the truth of the testimony of the two officers given against him. In answer to the question by the court, "Was the bottle wrapped up; anything around it?" the witness answered, "No, sir." Being asked by counsel, "Did they hand you a $5 bill?" he answered, "Yes, sir; they said, 'Here, give this to the girl.'"

Other testimony was given on behalf of the plaintiff in error, and upon the conclusion of all of the testimony the latter, through his counsel, moved the court for a directed verdict in his favor, which motion being denied, an exception was allowed. The sole point relied upon on behalf of the plaintiff in error for a reversal of the judgment against him is based upon this portion of the instructions of the court to the jury, to which an exception was reserved:

"Now, then, what is the testimony on the part of the government? The witnesses on the part of the government say that when they went in this Miller woman brought them in some drink, and then they asked for a flask, and she went out and said, "Wait a minute," went out with the partially filled flask, and then came back with the defendant. The defendant said, "That is all right; $5 for the bottle and for the two drinks," and gave the bottle to Mr. O'Hara and took the $5. Now, the defendant says that he was in the hall; that he did have his coat off, as the officers of the government said he did; that he did come into the room with the bottle of whisky in his hand; that he did deliver to one of these men the bottle, and did receive $5. Now, that far the testimony harmonizes. Now, he said that the woman gave it to him; he did not know what it was; told him to give it to the man, and he did it; then the officers came in and they found the $5 in his hand, just as the officers testified they did. Now, he was asked whether the bottle was wrapped up; he said, 'No.' He said he did not know what was in the bottle. It is for you to determine the fact. Now, if he was in the hall, and if this woman gave him the bottle and told him to deliver it to these men, and he did not know what was in the bottle, and gave it to the men, without knowing what was in the bottle, and got the $5 without knowing what was in the bottle, or what he was doing, if you believe that, then he is not guilty, because he didn't know what was in the bottle. If you believe that a man could be on the police force in Seattle for three years, and have a flask like that passed to him, with that color of contents, a man on the police force, and not knowing it was whisky or prohibited spirits provided by the Volstead Law and the prohibition amendment, then you must conclude that way, because it is for you to determine what the fact is. Now, I don't want you to conclude from any opinion you may think I have of the facts. I don't believe a word of it, myself: I believe he knew what was in the bottle, but that must not control you; you must find the fact. And while I have a right to tell you what I think about the facts, you must not be controlled by what I think about them; you must weigh all the testimony and all the circumstances, and determine what the truth is. If you have a reasonable doubt as to the facts, then you should return a verdict of not guilty. But if you are convinced beyond a reasonable doubt that he did know what was in the bottle, then it is your duty to return a verdict of guilty on the first count, and of guilty on the second count, because the possession of that one bottle would be sufficient to violate the law, as charged in this information, of possession and sale. * * *

"Now, in these instructions, gentlemen of the jury, I have related and referred to the facts or testimony and the circumstances, with a view of illustrating or demonstrating some proposition of law which has its application to the facts, and have expressed some personal opinion; but I do not want you to be controlled by it in any sense, but I want you to conclude upon the evidence itself, so that the law may be administered fairly, if the law has been violated that it may be enforced, and the parties who violate it be punished. When courts cease to function properly, then God have mercy upon the people of the United States. Law is a rule of civil conduct prescribed by a superior power, and persons must regulate their conduct with relation to that law. It is a rule by which people shall live, and

when they violate that rule why then they must be punished; that is the only way we can have government, and when courts and juries won't function it will only be a short step to a condition of anarchy. If you believe that the defendant went on the stand and perjured himself with a view of escaping a penalty, you will so conclude."

In its ruling denying the plaintiff in error's motion for a new trial, the court below relied in part upon the recent decision of the Supreme Court of the United States in Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185. Horning was a pawnbroker and was convicted of doing business as such in the District of Columbia, and charging more than 6 per cent. interest, without a license, contrary to the Act of Congress of February 4, 1913, c. 26, 37 Stat. 657. It appears from the prevailing opinion of the court in that case that there was absolutely no dispute as to the facts; the sole question, as expressly declared by the court, being whether the facts as admitted brought the case within the prohibition of the statute. That being so, a majority of the court (the Chief Justice and three Associate Justices dissenting) held that the trial court was not in error in practically directing the jury to return a verdict of guilty; that court saying in its instructions:

"In conclusion, I will say to you that a failure by you to bring in a verdict in this case can arise only from a willful and flagrant disregard of the evidence and the law as I have given it to you, and a violation of your obligation as jurors. * * * Of course, gentlemen of the jury, I cannot tell you, in so many words, to find defendant guilty, but what I say amounts to that."

The Supreme Court concluded its judgment of affirmance as follows:

"If the defendant suffered any wrong, it was purely formal, since, as we have said, on the facts admitted there was no doubt of his guilt. Act of February 26, 1919, c. 48, 40 Stat. 1181, amending § 269 of the Judicial Code; Act of March 3, 1911, c. 231, 36 Stat. 1087."

The facts in the present case were not undisputed, but, on the contrary, as will be seen from the statement of the case, were in sharp conflict, and, of course, were for the exclusive determination of the jury. "It is true," said the Supreme Court in the case of Starr v. U. S., 153 U. S. 614, 624, 14 S. Ct. 919, 923 (38 L. Ed. 841), "that in the federal courts the rule that obtains is similar to that in the English courts, and the presiding judge may, if in his discre-

tion he think proper, sum up the facts to the jury; and if no rule of law is incorrectly stated, and the matters of fact are ultimately submitted to the determination of the jury, it has been held that an expression of opinion upon the facts is not reviewable on error. Rucker v. Wheeler, 127 U. S. 85, 93; Lovejoy v. United States, 128 U. S. 171, 173. But he should take care to separate the law from the facts, and to leave the latter in unequivocal terms to the judgment of the jury as their true and peculiar province. McLanahan v. Universal Insurance Co., 1 Pet. 170, 182. As the jurors are the triers of facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand that the instruction is not given as to a point of law by which they are to be governed, but as a mere opinion as to the facts to which they should give no more weight than it was entitled to. Tracy v. Swartwout, 10 Pet. 80, 96; Games v. Stiles, 14 Pet. 322. The same rule prevails in the courts of many of the states, and in the charge in Commonwealth v. Selfridge, referred to by the court below, these views were expressed upon the subject: 'As to the evidence, I have no intention to guide or interfere with its just and natural operation upon your minds. I hold it the privilege of the jury to ascertain the facts, and that of the court to declare the law, to be distinct and independent. Should I interfere, with my opinion, with the testimony in order to influence your minds to incline either way, I should certainly step out of the province of the judge into that of an advocate. All that I can see necessary and proper for me to do in this part of the cause is to call your attention to the points or facts on which the cause may turn, state the prominent testimony in the case which may tend to establish or disprove these points, give you some rules by which you are to weigh the testimony, if a contrariety should have occurred, and leave you to form a decision according to your best judgment, without giving you to understand, if it can be avoided, what my own opinion of the subject is. Where the inquiry is merely into matters of fact, or where the facts and law can be clearly discriminated, I should always wish the jury to leave the stand without being able to ascertain what the opinion of the court as to those facts may be, that their minds may be left entirely unprejudiced to weigh the testimony and settle the merits of the case.' So the Supreme Court of Pennsylvania says: 'When there is sufficient evidence

upon a given point to go to the jury, it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the particular case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided. The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him; deductions and theories not warranted by the evidence should be studiously avoided. They can hardly fail to mislead the jury and work injustice.' Burke v. Maxwell, 81 Penn. St. 139, 153. See also 2 Thompson on Trials, §§ 2293, 2294, and cases cited. It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling. Hicks v. United States, 150 U. S. 442, 452. The circumstances of this case apparently aroused the indignation of the learned judge in an uncommon degree, and that indignation was expressed in terms which were not consistent with due regard to the right and duty of the jury to exercise an independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances.' "

As there stated by the Supreme Court, it cannot be doubted that "under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." Applying that obvious fact to the present case, I am unable to hold that the jury may not have been improperly influenced and controlled by those portions of the instructions of the court where it said: "If you believe that a man could be on the police force in Seattle for three years, and have a flask like that passed to him, with the color of contents, a man on the police force, and not knowing it was whisky or prohibited spirits provided by the Volstead Law and the prohibition amendment, then you must conclude that way, because it is for you to determine what the fact is. Now, I don't want you to conclude from any opinion you may think I have of the facts. I don't believe a word of it myself. I believe he knew what was in the bottle; but that must not control you; you must find the fact. * * * When courts cease to function properly,

then God have mercy upon the people of the United States. Law is a rule of civil conduct prescribed by a superior power, and persons must regulate their conduct with relation to that law. It is a rule by which people shall live, and when they violate that rule why then they must be punished; that is the only way we can have government, and when courts and juries won't function, it will only be a short step to a condition of anarchy. If you believe that the defendant went on the stand and perjured himself with a view of escaping a penalty, you will so conclude."

In the somewhat recent case of Pincolini v. United States (C. C. A.) 295 F. 468, 473, in which case I felt obliged to dissent, I said on page 473: "A late apparent tendency on the part of some courts to encroach upon the province of the jury, which, I take it, was in every case unintentional, makes it proper, I think, to set forth at length the above declaration of the Supreme Court. Turning to the instructions in the instant case, it is seen that, while the learned trial judge did expressly tell the jury that 'anything the court says with reference to the facts and the evidence in the case and the credibility of the witnesses is a matter which can have no weight with them except as it appeals to their judgment,' which they must follow, the court had before, as the bill of exceptions distinctly shows, stated not merely what the judge thought the evidence showed, but stated certain things as absolute facts, and one at least by way of argument, which obviously might have influenced the verdict of the jury." Those views I think are equally applicable to the instructions here in question, and I adhere to them.

I am therefore of the opinion that the judgment should be reversed, and the case remanded to the court below for a new trial.